The STATE of Ohio, Appellee,

v.

NEGUSE, Appellant.

[Cite as *State v. Neguse* (1991), 71 Ohio App.3d 596.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–917.

Decided March 28, 1991.

*Michael Miller,* Prosecuting Attorney, and *Joyce S. Anderson,* for appellee.

*James Kura,* Public Defender, and *Paul Skendelas,* for appellant.

McCormac, Judge.

An argument at the Greenbriar Apartment Complex on January 15, 1990 between defendant-appellant, Mekria Neguse, and the alleged victim, Robert McCoy, resulted in the shooting death of McCoy by appellant. After a pretrial evidentiary hearing which resulted in the denial of appellant's motion to dismiss for lack of subject matter jurisdiction and a jury trial on the merits, appellant was convicted in the Franklin County Court of Common Pleas of murder with specification for use of a firearm, and of having a weapon while under disability with specifications for prior drug abuse and assault convictions, as charged in the indictment. Defendant-appellant now appeals these convictions, alleging the following two assignments of error:

"First Assignment of Error

"The trial court lacked jurisdiction to hear the charges against appellant as there was insufficient credible evidence to establish by proof beyond a reasonable doubt that appellant was eighteen years of age or older at the time of the commission of the offense.

"Second Assignment of Error

"Appellant's conviction was not supported by sufficient credible evidence and was against the manifest weight of the evidence. This deprived appellant of due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

Appellant's first assignment of error attacks the court's denial of his pretrial motion to dismiss the indictment for lack of jurisdiction based on his alleged minority at the time the offense occurred. Although the thrust of appellant's first assignment of error is that the common pleas court abused its discretion in finding sufficient evidence to support its determination of appellant's majority at the time the offense occurred, we are initially concerned with the scope of the jurisdiction of the common pleas and juvenile courts over criminal cases and criminal defendants because the arguments of both parties are premised on allegations that appellant's age either is or is not determinative of the court's jurisdiction in this case. Only after we determine that appellant's age of majority was a prerequisite to the exercise of the common pleas court's jurisdiction, and that the applicable burdens of proof and persuasion were satisfied can we ascertain whether the trial court erred in finding sufficient evidence to overrule appellant's pretrial motion to dismiss.

The trial judge's remarks at the evidentiary hearing indicate that he considered appellant's age of majority a jurisdictional prerequisite. The trial judge specifically stated at the evidentiary hearing that jurisdiction of the

court is an element which the prosecution must establish beyond a reasonable doubt. After the presentation of conflicting evidence regarding appellant's age at the evidentiary hearing, the judge ruled that the prosecution presented evidence to prove beyond a reasonable doubt that appellant was beyond the age of eighteen when the offense occurred. Thus, the judge denied appellant's motion and ruled that the court had jurisdiction over both the case and the appellant.

Appellant contends that provisions of Ohio's Juvenile Court Act, R.C. Chapter 2151, deprived the common pleas court of subject matter jurisdiction over the instant case, whereas appellee contends that common pleas and juvenile courts have concurrent jurisdiction over juveniles charged with crimes. The subject matter jurisdiction of Ohio courts of common pleas is defined entirely by statute pursuant to Section 4, Article IV of the Ohio Constitution. The criminal law jurisdiction of common pleas courts is defined by R.C. 2931.02 and 2931.03, which grant common pleas courts general original subject matter jurisdiction over the prosecution of all crimes which take place within their geographical limits except for minor offenses where exclusive jurisdiction has been vested in an inferior court. Clearly, therefore, the Franklin County Common Pleas Court would have had jurisdiction to prosecute appellant if he was found to be an adult.

R.C. 2151.07 creates Ohio's juvenile courts. The Franklin County Juvenile Court is a branch within the Common Pleas Court's Division of Domestic Relations pursuant to R.C. 2151.07 and 2151.011(A)(1). As courts of limited and special subject matter jurisdiction, juvenile courts can exercise only the powers and jurisdiction conferred by Ohio's Juvenile Court Act, R.C. Chapter 2151. Based on his assertion that he is a juvenile, appellant contends that the common pleas court did not have jurisdiction to prosecute the instant case because R.C. 2151.23(A)(1) vested the juvenile court with exclusive subject matter jurisdiction over this case until such time as the juvenile court declared him an "adult" via a "bindover" proceeding in compliance with R.C. 2151.26 and Juv.R. 30.

The jurisdiction of juvenile courts is specifically defined by R.C. 2151.23 and 2151.26, effective November 19, 1969. R.C. 2151.23(A)(1) unequivocally states that the juvenile court has *exclusive* original subject matter jurisdiction to determine the case "concerning any child who * * * is alleged to be * * * a delinquent." [1] Similarly, R.C. 2151.25 provides in its entirety:

---

1. R.C. 2151.02(A) includes in its definition of "delinquent child" any child who violates any law of this state which would be a crime if committed by an adult. A "child" is defined for purposes of the instant case by R.C. 2151.011(B)(1) as a person who is under the age of eighteen years at the time of his commission of an offense.

"When a child is arrested under any charge, complaint, affidavit, or indictment, whether for a felony or a misdemeanor, proceedings regarding such child shall be initially in the juvenile court in accordance with this chapter. If the child is taken before a judge of a county court, mayor, judge of the municipal court, or judge of the court of common pleas other than a juvenile court, such judge of a county court, mayor, judge of the municipal court, or judge of the court of common pleas shall transfer the case to the juvenile court, whereupon proceedings shall be in accordance with this chapter. Upon such transfer all further proceedings under the charge, complaint, information, or indictment shall be discontinued in the court of said judge of a county court, mayor, municipal judge, or judge of the court of common pleas other than a juvenile court, and the case relating to such child shall thenceforth be within the exclusive jurisdiction of the juvenile court."

According to R.C. 2151.21, if appellant is correct in his interpretation of the jurisdictional provisions of the Juvenile Court Act, the proper remedy would have been a transfer of the case to the juvenile branch rather than a dismissal of the case.

The prosecutor maintains that these provisions concern only the jurisdiction over the person of the defendant and further maintains that, even if appellant was a minor at the time of the offense, such jurisdiction could be and was waived due to appellant's prior admissions and prior convictions in the Franklin County Court of Common Pleas. *State v. Klingenberger* (1925), 113 Ohio St. 418, 149 N.E. 395, paragraph one of the syllabus, and its progeny support this theory. Incorporated into the reformed Juvenile Court Act in 1969, however, was R.C. 2151.26(E) which seriously jeopardizes the current validity of cases which apply the waiver doctrine based upon the theory that age is an element of personal jurisdiction in juvenile cases by stating that:

"No child, either before or after reaching eighteen years of age, shall be prosecuted as an adult for an offense committed prior to becoming eighteen, unless the child has been transferred as provided in this section. Any prosecution that is had in a criminal court on the mistaken belief that the child was over eighteen years of age at the time of the commission of the offense shall be deemed a nullity, and the child shall not be considered to have been in jeopardy on the offense."

As I stated in my concurring opinion in *State v. Kimbler* (Sept. 20, 1977), Franklin App. No. 77AP–127, unreported, a case factually similar to the instant case:

"After November 19, 1969, despite the fact that the defendant child contributes to or causes the mistaken belief that he was over eighteen years of age at the time of the commission of the offense, a conviction is a nullity and

cannot be the basis for any other offense upon which the validity of the conviction depends. * * * " See, also, *State v. Taylor* (1985), 26 Ohio App.3d 69, 71, 26 OBR 243, 245, 498 N.E.2d 211, 213.

It is important to recognize that the aforementioned provisions of the Juvenile Court Act are wholly inapplicable unless the alleged defendant is a "child," as that term is defined by R.C. 2151.011(B)(1). (See footnote 1, *supra*.) All of the Ohio cases which have applied these provisions of the Juvenile Court Act, as well as the cases cited by appellee from other jurisdictions, presuppose the existence of a child or a statutory procedure for determining if a defendant is a child. These cases are largely inapplicable in this case because the primary issue presented is whether there is a "child" to trigger the jurisdictional requirements of the Juvenile Court Act. If appellant was a "child" on January 15, 1990, the trial court's conviction was a nullity due to its lack of subject matter jurisdiction. Conversely, if appellant was an adult on January 15, 1990, the common pleas court had jurisdiction over him and the juvenile court provisions had no application.

■ Unlike the California Juvenile Code provisions cited by appellee, Ohio lacks a specific statute, other than R.C. 2929.023 which is applicable only in certain capital cases, which outlines a procedure for determining whether appellant was a "child" at the time of the commission of the offense. Nevertheless, it is undisputed that the court of common pleas, as a court of general jurisdiction, possesses the authority to determine its own jurisdiction both over the person and the subject matter in an action subject to the right of appeal. *State ex rel. Miller v. Court of Common Pleas* (1949), 151 Ohio St. 397, 39 O.O. 232, 86 N.E.2d 464, paragraph three of the syllabus. Hence, the common pleas court was authorized to determine whether appellant's age deprived it of its general subject matter jurisdiction due to the aforementioned sections of the Juvenile Court Act, which initially vests exclusive subject matter jurisdiction over the adjudication of criminal cases against juvenile defendants in the juvenile court.

Having determined that appellant's majority was a prerequisite to the common pleas court's subject matter jurisdiction, and that the common pleas court was authorized to determine appellant's age via an evidentiary hearing on his motion to dismiss or transfer the case, the issue becomes whether the applicable burdens of proof and persuasion were satisfied on the issue of appellant's age. Despite the trial court's holding that the prosecution had the burden of proving beyond a reasonable doubt that appellant was an adult at the time of the offense, appellee cites *State v. Mendenhall* (1969), 21 Ohio App.2d 135, 50 O.O.2d 227, 255 N.E.2d 307, for the proposition that the prosecution had the burden to prove appellant's majority by a preponderance

of the evidence. Appellee contends that appellant had the burden of establishing his *minority* at the time of the offense by a preponderance of the evidence for three reasons: (1) because appellant's age was not an element of any of the charged offenses; (2) because appellant's age was a matter peculiarly within his knowledge and, thus, an affirmative defense under R.C. 2901.05(C)(2); and (3) because the burden of proving an exception to the general subject matter jurisdiction of the common pleas court is that of the party seeking to avoid jurisdiction.

We find appellee's arguments unpersuasive. The general rule is that, if a defendant properly asserts the defense of lack of jurisdiction, the plaintiff has the burden of establishing the court's jurisdiction. In criminal cases in common pleas court, the court's jurisdiction must be proved beyond a reasonable doubt as an element of the offense because the validity of any judgment depends upon the court having obtained jurisdiction. This statement is consistent with Crim.R. 12(B)(2), which deems an indictment which fails to establish the jurisdiction of the court void on its face and open to challenge by the defendant at any time. Hence, appellant's age, as an element of subject matter jurisdiction, was necessary for guilt to be determined in the common pleas court and must have been proved beyond a reasonable doubt by the prosecution.

The next issue is whether the trial court's denial of appellant's motion to dismiss was supported by evidence which permitted the court to find that appellant's majority on January 15, 1990 was established beyond a reasonable doubt. The first piece of evidence admitted at the evidentiary hearing was a stipulation between the parties described by the trial judge in the following terms:

"I have received an agreement between counsel that the proceedings that this Court went through in November of 1989 and the transcript of those proceedings can be judicially noticed by this Court and can be accepted by this Court for purposes of a hearing on this case, which includes the admissibility of some documents that were admitted at that point in time, and also statements made by Mr. Neguse, his testimony, and in addition, the stipulation that was entered into for purposes of a plea. Specifically, it was stipulated at that time for purposes of a plea on case number[s] 89CR–06–288B and 89CR–09–4079, it was stipulated at that time for purposes of that plea that the Defendant, at that time, was 18 years old or more. And it will not be necessary for this Court to have a typed transcript at this point in time, but one will be obtained for purpose of the record. Is that an accurate statement of what is stipulated?

"MR. LARSON: That's correct.

"MR. RZYMEK: Yes, Your Honor.

"THE COURT: I will give the prosecution an opportunity to present further evidence on the subject of the Defendant's age shortly.

"MR. RZYMEK: Your Honor, the only thing I was going to submit would be the agreement between the parties stipulated that these are the records from Children's Services involving Mr. Neguse when he was in the custody of Children's Services a few years ago.

"Let's mark it State's 1, I guess.

"MR. PLUNKETT: We've got a—

"THE COURT: Let's mark it as State's Hearing Exhibit."

The record before us does not contain the transcripts of appellant's prior testimony or the stipulations entered in the prior criminal cases against appellant, referred to by the trial judge as Nos. 89CR-06-288B and 89CR-09-4079. However, the substance of the documents was admitted. In summary, it was agreed that appellant had admitted in 1989 for the purpose of pleas in criminal cases that he was eighteen years old or more.

The evidence actually admitted in this case by the prosecutor to prove appellant's majority at the time of the offense included State's Hearing Exhibit No. 1, which was a compilation of the documents admitted via the stipulation of the parties in this case of appellant's prior history with Franklin County Children's Services ("FCCS"). Appellant's contention on appeal that these documents constituted inadmissible hearsay is not well taken. Besides never having objected to the admission of the documents, appellant stipulated to their admissibility as true and accurate copies of the FCCS records. Appellant has not shown that admission of the records was plain error which affected a substantial right of appellant as required by Crim.R. 52(B).

The FCCS records largely contain intake summaries and progress reports by FCCS caseworkers which reveal that appellant and his family emigrated to the United States from Ethiopia in 1984. A copy of appellant's I-94 immigration card, admitted by the defense as Hearing Exhibit A, states his date of birth as 12-9-73. The FCCS documents disclose that within a year of appellant's arrival in Ohio one of his teachers referred his family to FCCS and that temporary custody of appellant was awarded FCCS. From the point of FCCS intervention into this appellant's family, there was confusion as to appellant's true age. Records dated in the summer of 1985 reveal that appellant insisted to his caseworker that he was fifteen rather than twelve years of age at that time. The caseworker also reported, however, that appellant's mother stated that the reason appellant wanted to be older than the date on his I-94 card was to enable him to get a job and gain quicker

independence from his strict parents. The confusion continued through the fall of 1985 when appellant requested an acceleration in his grade level at school. Another FCCS report indicates that FCCS took appellant to Children's Hospital in Columbus, Ohio on October 1, 1985 for a bone marrow test in order to ascertain his true age. Although actual medical records were not admitted as evidence, the test evidently concluded that appellant's birth year was 1970, rather than 1973, because FCCS assigned him the birth date of January 1, 1970, and appellant's grade level at school was advanced. Catholic Social Services advised FCCS on May 28, 1986 that no legal problems would result if appellant used January 1, 1970 as his birthday on his green card application for permanent residence status and, thereafter, as his legal birthday for all purposes.

The only other evidence relied upon by the prosecution at the evidentiary hearing were certified copies of appellant's prior arrest records and subsequent convictions in five or six adult criminal cases since 1989, all of which were based upon the 1970 birth year. The transcript reveals that the prosecutor attached certified copies of these records to a motion and asked the court to simply "take notice" of the copies. Defense counsel specifically stated to the court that he did not object to the authenticity or admissibility of these records. It is unclear from the transcript of the evidentiary hearing whether the copies were actually admitted into evidence at the evidentiary hearing. Furthermore, neither the motion nor the certified copies are included in the appellate record.

Appellant testified on his own behalf at the evidentiary hearing. A copy of appellant's I–94 immigration card was admitted as evidence that appellant's date of birth is December 9, 1973. Appellant further testified that the birth year assigned by FCCS was incorrect, but that he never objected to it because it allowed him to be released from their custody much sooner than if he used a 1973 birth year. Appellant, however, did not state his true date of birth during his testimony but, instead, stated that he was unsure as to his exact age. In essence, he claimed that the date of January 1, 1970 was arbitrarily assigned after a doctor's examination. For self-serving purposes, he wanted the court to accept the date given by his mother when he entered the country.

Appellant had been using the January 1, 1970 date for about five years before the date of trial. There was a strong indication that his mother had arbitrarily assigned him the December 9, 1973 date when he entered the country. Appellant has juggled dates to suit his own purposes with little, if any, regard for reality. The best evidence was the date ascertained by the medical examination, which was arbitrary for month and day, but was sufficient to establish that appellant was over eighteen years of age on

January 15, 1990. It is highly unlikely that it was wrong by more than two years.

Appellant admitted on direct examination that he was convicted as an adult of four misdemeanors and two felonies. Appellant pled guilty in some of those cases upon defense counsel's advice, although the references made by a prior transcript indicate he was also tried on at least one felony charge. Apparently, appellant did inform Mr. Larson, who was also defense counsel in his last felony case in 1989, which was also before Judge Crawford, that he was a minor, and Mr. Larson did obtain appellant's I–94 immigration card at that time. Appellant testified that defense counsel nevertheless advised him to plead guilty in that case in order to receive a probationary sentence.

At the conclusion of the evidentiary hearing, the trial judge stated that the prosecution had not proved appellant's exact date of birth, but he concluded that, coupling appellant's stipulated admissions contained in the documents (which he sought to repudiate in this case) with the bone test, there was proof beyond a reasonable doubt that appellant was over eighteen at the time of the offense.

The trial court's finding of jurisdiction is supported by sufficient evidence for a reasonable trier of fact to conclude that appellant was over eighteen years of age at the time the offense was committed.

Appellant's first assignment of error is overruled.

The basis of appellant's second assignment of error is that the weight of the evidence supported a conviction for voluntary manslaughter, but not murder. Initially, we note that the test for determining the sufficiency of the evidence is whether reasonable minds can reach different conclusions on the issue of whether the defendant is guilty beyond a reasonable doubt. *State v. Black* (1978), 54 Ohio St.2d 304, 8 O.O.3d 296, 376 N.E.2d 948. In reviewing a case to determine whether the verdict is against the manifest weight of the evidence, we will reverse the judgment of the trier of fact only where reasonable minds could not fail to find reasonable doubt. *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O.2d 366, 197 N.E.2d 548, paragraph five of the syllabus. In each instance, the weight to be given to the evidence and determinations as to credibility of witnesses are matters primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

Applying these guidelines, we find that the jury's verdict was supported by the evidence. The offense of murder requires a showing of *purposeful* intent. See R.C. 2903.02. "Purposefully" is defined by R.C. 2901.22(A) as follows:

"A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

The lesser offense of voluntary manslaughter requires that the prosecution prove that appellant *knowingly* caused the death of another while under the influence of sudden passion or rage which is provoked by the victim. Appellant argues that witness testimony established that appellant shot and killed the victim as a response to serious provocation, specifically the threat of several persons "jumping him" during an argument.

Although Robert Holycross testified that while standing outside of an apartment building he saw five or six people argue with appellant inside of an adjacent building and, thereafter, push appellant outside the door of the building in an attempt to "jump him," Holycross admitted to not hearing an argument and not seeing appellant threatened with a weapon. Furthermore, the testimony of other witnesses negated the existence of provocation and provided proof that appellant purposely shot the victim to death. Marvin Norwood testified that appellant told him immediately after the killing that he shot the victim because the victim called appellant's gun a toy. Furthermore, Ricky Lee Fitzgerald testified that he was inside the building where the shooting took place and that he saw appellant point a gun and shoot the victim. Fitzgerald further testified that there was no argument, that the only other person present was an unknown man with appellant, and that the shooting took place inside the building.

Since the credibility of witness testimony is to be decided by the jury, we will not substitute the judgment of the jury when it is supported by the evidence. The jury was authorized to disregard Holycross' testimony as unworthy of belief and to rely on the remaining evidence to support its verdict. Accordingly, appellant's conviction is supported by sufficient evidence and is not against the weight of the evidence.

Appellant's second assignment of error is overruled.

Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BOWMAN, P.J., and WHITESIDE, J., concur.