The STATE of Ohio, Appellee,

v.

McCLURE, Appellant.

[Cite as *State v. McClure,* 159 Ohio App.3d 710, 2005-Ohio-777.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040099.

Decided Feb. 25, 2005.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Judith Anton Lapp, Assistant Prosecuting Attorney, for appellee.

Michaela M. Stagnaro, for appellant.

---

Doan, Presiding Judge.

{¶ 1} As part of a plea agreement, defendant-appellant, Tricia McClure, pleaded guilty to two counts of felonious assault pursuant to R.C. 2903.11(A)(1). McClure was a foster mother who was the legal guardian of four-year-old Erica McClure and the adoptive mother of three-year-old Kane McClure. She decided to kill herself and her two children. She put her children in her van, which was parked in a friend's garage, started the engine, and put in a videotape for the children to watch. After about 45 minutes, Kane began to cry as if he were in pain, which caused McClure to "snap out of it." She took the children outside and called for help. She admitted to police and fire personnel at the scene that she had tried to kill herself and her children. The children were treated for carbon monoxide poisoning.

{¶ 2} The trial court sentenced McClure to five years of community control. As part of the conditions of her community control, the court ordered her to have no contact with her children. This appeal followed.

{¶ 3} In her sole assignment of error, McClure states that the trial court erred by "imposing an unlawful and/or unconstitutional community control sanction." She argues that the condition that she have no contact with her children was equivalent to a termination of her parental rights without due process. This assignment of error is not well taken.

{¶ 4} R.C. 2929.15(A)(1) states the trial court may impose community-control sanctions as set forth in R.C. 2929.16, 2929.17, or 2929.18. Further, "[t]he court may impose any other conditions of release under a community control sanction that the court considers appropriate * * *."

{¶ 5} McClure relies upon this court's decision in *State v. Sturgeon* (2000), 138 Ohio App.3d 882, 742 N.E.2d 730. In that case, we held that although the trial court generally retains jurisdiction in determining what additional community-control conditions are appropriate, the court may not impose a condition that is unlawful, unconstitutional, or unrelated to the crime that the offender has committed. Id. at 885–886, 742 N.E.2d 730; *State v. Burton,* 1st Dist. Nos. C–020014 and C–020203, 2002-Ohio-6653, 2002 WL 31728933, ¶ 8.

{¶ 6} In *Sturgeon,* the defendant was convicted of domestic violence against his wife, who was also the mother of his children. He was sentenced to four years'

community control, which included a condition that he stay away from his wife "and her children." *Sturgeon,* supra, 138 Ohio App.3d at 884, 742 N.E.2d 730. We held under the facts of the case that the trial court had no authority to impose that condition. We reasoned that an absolute prohibition on any contact with the defendant's children in effect amounted to a termination of the defendant's parental rights without due process. Id. at 886, 742 N.E.2d 730; *Burton,* supra, 2002-Ohio-6653, 2002 WL 31728933, at ¶ 8.

{¶ 7} We followed *Sturgeon* in *Burton,* in which the defendant was convicted of theft and receiving stolen property. The trial court sentenced her to five years' community control with intensive supervision, drug testing, and drug treatment. It also prohibited her from having custody of her four-year-old son during the five-year period of community control without the trial court's consent. We again held that the trial court acted outside of its authority in imposing that condition as part of the defendant's community control. *Burton,* supra, 2002-Ohio-6653, 2002 WL 31728933, at ¶ 9.

{¶ 8} The application of *Sturgeon* to this case is problematic. Before the passage of the sweeping sentencing changes in 1995 Am.Sub.S.B. No. 2, courts had followed the test set out in *State v. Jones* (1990), 49 Ohio St.3d 51, 550 N.E.2d 469, in determining whether conditions of probation were appropriate. In that case, the Ohio Supreme Court stated: "In determining whether a condition of probation is related to the 'interests of doing justice, rehabilitating the offender, and insuring his good behavior,' courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." Id. at 53, 550 N.E.2d 469.

{¶ 9} In *Sturgeon,* we held that the *Jones* test did not apply to conditions of community control as set out in R.C. 2929.15 after Senate Bill 2. *Sturgeon,* supra, 138 Ohio App.3d at 886, 742 N.E.2d 730. Other appellate courts have disagreed and have continued to apply the *Jones* test. See, e.g., *State v. Thompson,* 150 Ohio App.3d 641, 2002-Ohio-7098, 782 N.E.2d 688, ¶ 13–32; *State v. Lake,* 150 Ohio App.3d 408, 2002-Ohio-6484, 781 N.E.2d 1053, ¶ 12–18; *State v. Oros,* 4th Dist. No. 01CA47, 2001-Ohio-2574, 2001 WL 1122073.

{¶ 10} In *State v. Talty,* 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, the Supreme Court applied the *Jones* test in analyzing the validity of conditions of community control after Senate Bill 2. It stated that *Jones* stands for the proposition that probation conditions must be reasonably related to the statutory ends of probation and must not be overbroad. It went on to state, "The community-control statute, despite changing the manner in which probation was administered, did not change its underlying goals of rehabilitation, administering

justice, and ensuring good behavior—notwithstanding the lack of explicit language in the community-control statute to that effect. Consequently, we see no meaningful distinction between community control and probation for purposes of reviewing the reasonableness of their conditions." Id. at ¶ 16.

{¶ 11} Following the Supreme Court's decision in *Talty*, we apply the *Jones* test in the present case. Nevertheless, we believe the holdings in *Sturgeon* and *Burton* still have some validity because the conditions imposed in those cases were completely unrelated to the crimes that the defendant had committed and were overbroad. Therefore, they would not have passed the *Jones* test.

{¶ 12} This case is distinguishable because the condition of community control was related to the crimes for which the defendant was convicted and, therefore, passed the *Jones* test. McClure was convicted of felonious assault against her children. She admitted at all times that she had tried to kill them, as well as herself. Further, she had a history of mental illness and of making decisions that might not have been in her children's best interest. The condition that she not have any contact with those children was reasonably related to the crimes for which she was convicted and to her rehabilitation. It protects the children during the time that she is receiving psychological treatment. McClure had the means and intention to kill her children, and she could attempt to do so again if that treatment is not successful. The community-control condition is a temporary order that does not permanently terminate her parental rights or cause any change in the legal custody of either child.

{¶ 13} Courts have upheld conditions that restrict parental rights, including those that allow no contact, when the defendant's children were the victims of the crime for which the defendant was convicted. See *State v. Sommerfeld*, 8th Dist. No. 84154, 2004-Ohio-6101, 2004 WL 2609608, ¶ 40–45; Annotation (2004), 99 A.L.R.3d 967, Section 5. Though the juvenile court has jurisdiction to restrict or terminate parental rights, *Sturgeon, supra,* 138 Ohio App.3d at 886, 742 N.E.2d 730, the common pleas court has original subject-matter jurisdiction over all crimes that take place within its geographical limits except minor offenses where exclusive jurisdiction has been vested in an inferior court. R.C. 2931.03; *State v. Neguse* (1991), 71 Ohio App.3d 596, 599, 594 N.E.2d 1116. In this case, the trial court was within its jurisdiction to impose the condition that McClure have no contact with her children as the result of her convictions, as long as that condition passed the *Jones* test, the test applied in criminal cases. Accordingly, we overrule McClure's assignment of error, and we affirm the trial court's judgment.

Judgment affirmed.

Sᴜɴᴅᴇʀᴍᴀɴɴ, J., concurs.

Pᴀɪɴᴛᴇʀ, J., dissents.

Pᴀɪɴᴛᴇʀ, Judge, dissenting.

{¶ 14} In *Sturgeon* we confronted this issue. Judge Sundermann wrote at that time, "[W]e hold that the contested condition is not constitutionally or statutorily permitted. It is well established that the right to have custody of, and to raise, one's children is a substantial and fundamental civil right that may not be terminated without due process. However, this right is not absolute. Pursuant to R.C. Chapter 2151, a juvenile court has the power to limit parental rights. Generally, the procedures that result in the restriction of parental rights are graduated in nature, often starting with protective supervision of the child at home, then removal and temporary custody, and ultimately permanent custody if warranted. Though the juvenile court is, for example, empowered under R.C. 2151.353 to offer certain protections to an abused, neglected, or dependent child, such as an order removing a child from the home, the statutory procedural requirements must nevertheless be followed. In this case, Sturgeon's parental rights were effectively terminated, but he was not offered any of the procedural guarantees set forth in R.C. Chapter 2151." [1] (Citations omitted.)

{¶ 15} The proper forum to resolve parental rights is juvenile court. We have juvenile courts for a reason.

{¶ 16} While this case does involve a parent who obviously should be separated from her children unless and until she ceases to be a threat to them, the juvenile court is well equipped to police the situation. The common pleas court is not.

{¶ 17} What if in three years McClure is free of the mental problems? Does she apply to the common pleas court to remove the condition of no contact with her children? Would she then perhaps have limited and supervised visitation? Does the common pleas court want to supervise the visitation? Surely these issues belong in juvenile court. We are mixing courts' roles and allowing a court particularly unequipped to deal with parenting issues to make these decisions.

{¶ 18} In addition, if McClure is not allowed to see her children for 12 consecutive months of a 22-month period, she will most probably lose parental rights through a juvenile court proceeding, another reason why the common pleas court should not be involved.[2]

---

1. *State v. Sturgeon* (2000), 138 Ohio App.3d 882, 886, 742 N.E.2d 730.

2. See R.C. 2151.413.

{¶ 19} In *Sturgeon* and *Burton* we got it right—the juvenile court has sole jurisdiction to deal with these matters. Today, we retreat from prudence into folly.