[Cite as *State v. Bonilla*, 2014-Ohio-623.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

STATE OF OHIO                           :

    Plaintiff-Appellee               :          C.A. CASE NO.    2011 CA 46

v.                                      :          T.C. NO.    98CR488

EDUARDO BONILLA                         :          (Criminal appeal from
aka JUAN RAMONE LOPEZ                               Common Pleas Court)

    Defendant-Appellant              :

                                        :

. . . . . . . . . .

# O P I N I O N

Rendered on the ____ 21st ____ day of ____ February ____, 2014.

. . . . . . . . . .

ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecutor, 61 Greene Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P. O. Box 341021, Beavercreek, Ohio 45434
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, P.J.

{¶ 1} Eduardo Bonilla, aka Juan Ramone Lopez,[1] appeals from a judgment of the Greene County Court of Common Pleas, which denied his motion to vacate his conviction for want of subject matter jurisdiction. For the following reasons, the trial court's judgment will be affirmed.

{¶ 2} In 1999, Bonilla was found guilty, after a jury trial, of seven offenses, including complicity to commit aggravated murder, complicity to commit murder, and complicity to commit kidnapping. The charges stemmed from plans to kidnap, rob, and murder Mark "Corky" Miller, a drug dealer, due to a large drug debt that Miller owed to Bonilla, his Chicago supplier. Bonilla, in turn, was being threatened by his own supplier if Bonilla did not get the money that was owed. Miller and one of Bonilla's co-conspirators were killed during a shoot-out in a Beavercreek apartment on October 4, 1998, as Bonilla and others attempted to kidnap Miller.[2]

{¶ 3} At Bonilla's sentencing, the trial court merged several of the offenses and imposed consecutive sentences totaling life plus thirty years in prison. We affirmed Bonilla's convictions on direct appeal. *State v. Bonilla*, 2d Dist. Greene No. 99 CA 118, 2001 WL 236762 (Mar. 2, 2001). Bonilla subsequently sought postconviction relief, challenging his sentence. The trial court denied the petition; Bonilla did not appeal. In 2005, Bonilla filed a motion for a new trial. We affirmed the trial court's denial of that

---

[1] Bonilla has used several aliases. At trial and during the hearing on his motion to vacate, he testified that his name is, in fact, Juan Ramone Lopez. For sake of consistency, we will continue to refer to him as Bonilla, the name under which he was indicted, tried, and convicted in this case.

[2] A detailed account of the facts underlying Bonilla's offenses was set forth in Bonilla's direct appeal from his convictions. *State v. Bonilla*, 2d Dist. Greene No. 99 CA 118, 2001 WL 236762 (Mar. 2, 2001).

motion.  *State v. Bonilla*, 2d Dist. Greene No. 2008 CA 68, 2009-Ohio-4784.

{¶ 4}    On January 24, 2011, Bonilla filed a motion to vacate his conviction, claiming, for the first time, that the trial court lacked subject matter jurisdiction over his case because he was a minor (17 years old) on October 4, 1998, when the offenses occurred. Bonilla supported his motion with a purported birth certificate from the Republic of Guatemala for a Juan Ramone López, born in Malacatán, San Marcos, Guatemala, on October 23, 1980, to Zuly Barrillas and Juan Ramón López.  The court conducted a hearing on the motion, during which Bonilla and the State presented additional evidence.

{¶ 5}    After the hearing, the court overruled Bonilla's motion.  The trial court noted that Bonilla's motion met the definition of a petition for postconviction relief under R.C. 2953.21, that the motion was untimely, and that Bonilla failed to demonstrate that the untimeliness was excusable under R.C. 2953.23.  The court further noted, however, that "a conviction that is void for lack of jurisdiction may be attacked at any time," but if jurisdiction had been established at trial, then the conviction is not void and postconviction relief procedures should apply.

{¶ 6}    The court found that the evidence at trial established that Bonilla was an adult at the time of the offenses.  Bonilla had testified at trial that he was 21 years old, and Stephanie Harden testified that, when she met Bonilla in the summer of 1998, Bonilla had told her that he was 19 years old.  Other testimony at trial supported the conclusion that his birthday was in late August or September, not late October.  Bonilla had presented no argument or evidence at trial that he was a "child" at the time of the offenses.

{¶ 7}    The court next considered the evidence submitted at the hearing on Bonilla's

motion to vacate, which included testimony by Bonilla, Bonilla's niece, and the investigating detective, as well as documentation of Bonilla's convictions in other Ohio courts. Upon reviewing the evidence, the trial court stated, "One thing that has been clearly established by the evidence is that the defendant is a liar and that nothing he testifies to can be taken for the truth without corroboration. Two official documents [the birth certificate and a green card] have been used by the defendant to establish his age; at least one of them is clearly a forgery and fails to establish his true age." While noting that the evidence "is perhaps insufficient to establish his actual birth date with certainty," the trial court found that the evidence provided by the State was "sufficient to prove that the defendant was over the age of 18 at the time of the offense, beyond a reasonable doubt."

{¶ 8} Bonilla appeals from the trial court's judgment. His sole assignment of error claims that "the trial court erred by overruling [his] motion to vacate void judgment for lack of subject matter jurisdiction pursuant to R.C. 2151.26(E) and *State v. Wilson*, 73 Ohio St.3d 40."

{¶ 9} The subject matter jurisdiction of Ohio courts of common pleas is defined by statute, pursuant to Section 4, Article IV of the Ohio Constitution. *State v. Neguse*, 71 Ohio App.3d 596, 599, 594 N.E.2d 1116 (10th Dist.1991). "The criminal law jurisdiction of common pleas courts is defined by R.C. 2931.02 and 2931.03, which grant common pleas courts general original subject matter jurisdiction over the prosecution of all crimes which take place within their geographical limits except for minor offenses where exclusive jurisdiction has been vested in an inferior court." *Id.* Bonilla's charged offenses, if committed by an adult, fell within the purview of the Greene County Court of Common

Pleas, General Division.

{¶ 10} R.C. 2151.23 provides exclusive original subject matter jurisdiction to the juvenile court concerning any "child" who, on or about the date specified in the complaint, is alleged to be a delinquent or unruly. Former and current R.C. 2151.23(A)(1). At the time of Bonilla's offenses, R.C. 2151.23(H) further provided:

> If a child who is charged with an act that would be an offense if committed by an adult was fourteen years of age or older and under eighteen years of age at the time of the alleged act and if the case is transferred for criminal prosecution pursuant to section 2151.26 of the Revised Code, the juvenile court does not have jurisdiction to hear or determine the case subsequent to the transfer. The court to which the case is transferred for criminal prosecution pursuant to that section has jurisdiction subsequent to the transfer to hear and determine the case in the same manner as if the case originally had been commenced in that court * * *.

*Id.*; *see also* Juv.R. 30.

{¶ 11} Former R.C. 2151.26[3] governed the transfer of a criminal prosecution from juvenile court to the appropriate adult court. R.C. 2151.26(E), now codified as R.C. 2152.26(H), read:

> No person, either before or after reaching eighteen years of age, shall be prosecuted as an adult for an offense committed prior to becoming eighteen years of age, unless the person has been transferred as provided in division

---

[3] R.C. 2151.26 has been repealed and recodified as R.C. 2152.12.

(B) or (C) of this section or unless division (G) of this section applies. Any prosecution that is had in a criminal court on the mistaken belief that the person who is the subject of the case was eighteen years of age or older at the time of the commission of the offense shall be deemed a nullity, and the person shall not be considered to have been in jeopardy on the offense.

{¶ 12} Consistent with these statutes, the Ohio Supreme Court has held that, "[a]bsent a proper bindover procedure pursuant to R.C. 2151.26, the juvenile court has the exclusive subject matter jurisdiction over any case concerning a child who is alleged to be a delinquent," and that the "exclusive subject matter jurisdiction of the juvenile court cannot be waived." *State v. Wilson*, 73 Ohio St.3d 40, 652 N.E.2d 196 (1995), paragraphs one and two of the syllabus.

{¶ 13} Bonilla claims that his 1999 convictions are void, because he was 17 years old at the time of the offenses on October 4, 1998. He asserts that his birthday is October 23, 1980, as reflected by the Guatemalan birth certificate.

{¶ 14} As an initial matter, the State asserts that Bonilla's motion is "nothing more than a successive petition for post-conviction relief." The State argues that Bonilla's motion – brought eleven years after his conviction – was untimely and that Bonilla was not unavoidably prevented from learning the facts to support his claim. The State further asserts that res judicata bars relief, because Bonilla could have raised the issue in a prior postconviction motion.

{¶ 15} Assuming, arguendo, that Bonilla's motion should be treated as a petition for postconviction relief, Bonilla's motion was properly rejected by the trial court.

Bonilla's motion was filed eleven years after his conviction, well beyond the 180-day time period for filing a petition for postconviction relief. The petition was thus untimely, and Bonilla did not establish that his timeliness was excused under R.C. 2953.23. Bonilla has not asserted, much less demonstrated, that he was unavoidably prevented from learning his actual age.

{¶ 16} However, we need not decide whether, under the facts of this case, Bonilla's motion should be construed as a petition for postconviction relief. Even assuming that Bonilla's motion properly challenged the trial court's subject matter jurisdiction and that the State had the burden of proving that Bonilla was an adult at the time of the offenses, we find no fault with the trial court's conclusion that it had subject matter jurisdiction over Bonilla's case.

{¶ 17} At the hearing on his motion, Bonilla testified on his own behalf and he presented his 18-year-old niece, Korayma Lopez, as a witness. Lopez testified that she is a United States citizen who was born in California, raised in Chicago, and currently lives in Guatamala. Lopez identified Bonilla as Juan Ramone Lopez, her mother's brother, and she testified that Bonilla's parents (her grandparents) were Zuly Barrillas and Juan Ramon Lopez. Lopez testified that she met Bonilla while she lived in Chicago, and she has seen him "five or more" times. Lopez identified a childhood photograph of herself with her brother, her sister, and Bonilla, taken at Ross Correctional Institute, where Bonilla was incarcerated.

{¶ 18} Bonilla testified that his real name is Juan Ramone Lopez and that he was born on October 23, 1980. He stated that he "changed his age" so that he could buy

cigarettes and later, when he started drinking, he used a fake green card with an inaccurate birth date of August 23, 1978, so that he would be able to purchase beer.

{¶ 19} The State cross-examined Bonilla extensively about his 1999 trial testimony and his adult convictions under other aliases. Bonilla acknowledged that he had convictions under the names Monte Lopez, Jesse Lugo, and Juan Lopez. Bonilla stated that he had provided August 23, 1978 as his birth date when he was arrested on the charges at issue under the name Eduardo Bonilla. The State elicited testimony from Bonilla that, at his October 1999 trial, Bonilla had testified that he was 21 years old. Bonilla explained at the hearing that "Eduardo Bonilla" was 21 years old at the time of trial, but that he (Juan Ramone Lopez) was not. The State asked Bonilla about other specific instances when he indicated that his birth date was in 1978 or 1976; Bonilla generally did not recall those instances.

{¶ 20} During cross-examination, the State asked Bonilla about inconsistencies in his background information. Bonilla testified at the hearing that he had not lived long in California and that he did not attend high school in the United States; the State contradicted that testimony with Bonilla's 1999 trial testimony, in which he had stated that he moved to the United States when he was 14 years old, lived in Los Angeles for two years, and attended high school in California until eleventh grade. Bonilla testified at his 1999 trial that he was born in Guatemala City, but the purported birth certificate was for Malacatán. Bonilla had further testified at his trial that he was avoiding coming to Dayton after June 1998, but he came back in October 1998 to see the mother of his unborn child; Bonilla testified that the "pregnant girl" had come to see him on his birthday and she called and asked when he was

coming to see her. Bonilla acknowledged on cross-examination that this testimony suggested that his birthday was shortly before the October 4, 1998 murder.

{¶ 21} Bonilla explained that he waited twelve years to raise the issue of his age, because he was incarcerated, he had no family in the United States, and English was his second language. However, he also testified that his mother had lived in Woodbridge, Illinois, and Lopez's testimony indicated that Bonilla had family in the Chicago area for several years after Bonilla's conviction.

{¶ 22} The State offered the testimony of Sergeant George Combs and Detective Mark Brown, both of the Beavercreek Police Department. Sgt. Combs testified that he investigated the murder on October 4, 1998, and, as part of that investigation, he met Bonilla at the Lake County Sheriff's Jail in Crown Point, Indiana. Combs stated that he completed a pre-interview form with Bonilla, at which time Bonilla indicated that his birth date was August 23, 1978 and that he resided at 7517 Orchard, #5, in Woodbridge, Illinois. Bonilla filled out the portion of the form regarding education; the form indicated that Bonilla had 12 years of schooling and that he last attended Wilson High School in 1996. Combs testified that he performed various computer checks on Bonilla using the L.E.A.D.S. and NCIC police computers and sent Bonilla's fingerprints to the FBI. The FBI responded that the fingerprints were associated with the name "Juan Ramon Lopez," with a birth date of September 23, 1978. Combs stated that he continued to use the August 1978 date in the case because it was the date of birth that Bonilla most often used.

{¶ 23} Detective Brown testified that he obtained certified copies of convictions from Vandalia Municipal Court, Dayton Municipal Court and Montgomery Count Common

Pleas Court for the names Juan Lopez, Eduardo Bonilla, Jesse Lugo, and Monte Lopez. The following certified judgment entries were submitted into evidence:

1. Moncy Lopez, aka Eduardo Bonilla Barillas, dob August 23, 1976: Montgomery County Court of Common Pleas conviction for possession of heroin on July 28, 2000; date of offense was June 17, 1998 (State's Ex. 2).

2. Jesse Lugo, Jr., dob July 5, 1977, charged with driving without a license in Dayton Municipal Court, dated June 17, 1998 (State's Ex. 5).

3. Juan Ramon Lopez, dob August 23, 1978, open container conviction, Vandalia Municipal Court, dated September 30, 1997 (State's Ex. 8).

4. Juan Ramon Lopez, dob August 23, 1978, Vandalia Municipal Court conviction for driving without a license on December 31, 1997; violation date was October 29, 1997 (State's Ex. 9)

As of the date of the hearing on Bonilla's motion, Bonilla had not challenged any of these other convictions for lack of subject matter jurisdiction.

{¶ 24} Upon review of the evidence, the State presented substantial credible evidence that Bonilla was an adult at the time of the offenses in this case. Bonilla had testified at trial that he was 21 years old (on October 8, 1999) and other witnesses at trial provided evidence indicating that Bonilla had turned 18 prior to the date of the offenses. Bonilla repeatedly provided dates of births that would have made him an adult on October 4, 1998. Two 1997 convictions from Vandalia Municipal Court for Juan Ramon Lopez indicated a date of birth of August 23, 1978. The 1998 traffic case from Dayton Municipal Court for Jesse Lugo indicated a date of birth of July 5, 1977. The Montgomery County

case for Eduardo Bonilla Barillas had a date of birth of August 23, 1976. Bonilla acknowledged he was the defendant in several of those cases. The pre-interview form that Detective Combs completed with Bonilla indicated that Bonilla had 12 years of schooling and that he last attended Wilson High School in 1996; that information was consistent with a birth date in 1978.

{¶ 25} The trial court found Bonilla's testimony about his age to be not credible, and the court had ample evidence from which to reject Bonilla's testimony and evidence that his actual birth date was October 23, 1980. Bonilla had repeatedly used false documentation to support his various aliases. At trial, Bonilla explained that he borrowed the name Eduardo Bonilla from someone he knew at school named Eduardo Bonilla Santino and that he (Bonilla) made a fake identification card with that name. At the hearing on Bonilla's motion, Bonilla indicated that Detective Combs had Bonilla's fake green card, which showed the August 23, 1978 birth date. Bonilla was asked about his alias Jessie Lugo at his 1999 trial. Bonilla responded that "one guy in Chicago sold me this birth certificate with the name of Jessie Lugo" so that Bonilla could go back and forth to Mexico; Bonilla stated that he made an ID with the birth certificate, but he lost it.

{¶ 26} Bonilla supported his motion with a purported Guatemalan birth certificate for Juan Ramone López, born in Malacatán, San Marcos, Guatemala, on October 23, 1980, to Zuly Barrillas and Juan Ramón López. However, Bonilla had testified at his trial that he was 21 years old and was born in Guatemala City, not Malacatán. Bonilla repeatedly contradicted himself regarding his background and his family's residences, and he explained that he used earlier birth years as a way to purchase beer and cigarettes while a minor.

Bonilla's 18-year-old niece, Korayma Lopez, testified that Bonilla's parents were Zuly Barrillas and Juan Ramón López, but the court did not find that Lopez's testimony established that the birth certificate was authentic and reflected Bonilla's birth. Although the Guatemalan birth certificate appeared to be certified, the trial court reasonably found it unreliable, and there was little basis to believe that Bonilla was the individual identified in that document.

{¶ 27} In summary, we agree with the trial court's conclusion that, although Bonilla's exact birth date could not be definitively established, the State proved that Bonilla turned 18 prior to the October 4, 1998 offenses. The trial court did not err in concluding that the State established that defendant was not a "child" at the time of the offenses and, thus, the trial court had subject matter jurisdiction over his criminal case.

{¶ 28} Bonilla's assignment of error is overruled.

{¶ 29} The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Elizabeth A. Ellis
Robert Alan Brenner
Hon. Sumner E. Walters, Visiting Judge