## STATE v. WILLIAM ANTHONY BLACK.

### 183 N. W. (2d) 774.

### February 5, 1971—No. 42363.

*Lindquist & Vennum, Norman L. Newhall, Jr.,* and *Edward R. Garvey,* for appellant.

*Douglas M. Head,* Attorney General, *Robert W. Johnson,* County Attorney, and *Gerard W. Snell,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Otis, Peterson, Kelly, and Rosengren, JJ.

PER CURIAM.

The issue here for review is whether it was proper for the trial court to revoke defendant's probation because he applied for a marriage license. We hold that the revocation was not justified and therefore reverse.

On September 26, 1968, defendant pled guilty to possession of marijuana in violation of Minn. St. 618.02. Imposition of sentence was stayed and defendant was placed on probation. One of the conditions of probation was as follows:

"Through my Agent, I will request permission from the Adult Corrections Commission to:

\* \* \* \* \*

"2. Marry."

Early in September 1969, defendant revealed to his probation officer his desire to marry a girl who would become 16 years of age on October 3 and who was also on probation. The agent expressed disapproval. On September 25, 1969, the agent gave the court an adverse report with respect to defendant, but the court, nevertheless, continued the stay of sentence until August 1970.

With the consent of the girl's parents, on October 28, 1969, defendant applied to the probate court of Anoka County for a license to marry her. The application came to the attention of the probation officer 2 days later. Thereupon, the commissioner of corrections notified the court that defendant

"* * * has violated the terms of his said probation in the following particulars:

"(1) FAILURE TO REQUEST PERMISSION TO BE MARRIED."

Upon receipt of this information, the district court on November 3, without notice to defendant, revoked probation and ordered him to appear for sentencing. Defendant requested and was granted a hearing on the propriety of that order. At the hearing on November 4, 1969, the court stated:

"Counsel, the grounds for revocation is his failure to require [request] permission to be married, that is the only thing the Court is interested in."

In response to counsel's examination with respect to the grounds for revocation, the officer testified:

"* * * I feel Mr. Black has taken a very definite step toward getting married by making application for a marriage license in the district court clerk's office in Anoka County."

Counsel asked the officer if he had any proof that defendant was going to get married prior to obtaining permission, to which the officer answered:

"No, I don't. I just know that he has taken the step of getting the marriage license."

Defendant himself testified that he realized he had to approach his probation officer, that he expected to request permission, and that he did not intend to marry until he could obtain permission.

Before imposing sentence, the court stated:

"* * * The Court assumes that the purchase of a marriage license

surreptitiously without contact of any kind with any of the authorities was an intent, and demonstrated an intent to marry, and had it not been for the accidental discovery of the fact that this license had been applied for, these people the Court assumes, would have been married without permission."

Thereupon, defendant was committed to the Youth Conservation Commission for a term not to exceed 20 years. He has been free on bail pending appeal. The court's impressions transmitted to the Department of Corrections included, among other things, the following observation:

"* * * Notwithstanding that he did not have authority to marry a 15 year old girl, he proceeded to get a marriage license for that purpose and in carrying out that purpose, his parents, along with this girl, went to St. Cloud for the purposes of buying a home for the couple in which they were to live after the marriage. He and his parents knew that the probation officer had not given any approval for such arrangement. The parents were aiding and abetting the boy in violating the probation conditions."

We decline to hold that a requirement that defendant secure approval of his probation agent before getting married offends public policy. We find this a reasonable condition which is directed not only at defendant's rehabilitation but at the protection of his prospective wife and children as well. It is enough to say that there may be situations where marriage compounds rather than resolves a probationer's problems. Until and unless he is economically and psychologically capable of supporting a family, it is proper to forbid his marriage, and in so doing he is denied no constitutional rights. However, under the circumstances here presented, we find inadequate proof of intent to marry without approval, let alone execution of that purpose. At the time defendant's probation was revoked, the 5-day waiting period had not elapsed and he was therefore not yet eligible to secure a marriage license. While the record shows he had previously expressed indignation that his probation officer's approval was necessary, there is no evidence that he ever expressed an intent to ignore the terms of his probation. Whatever preliminary steps he took were not irreversible. In any event, nothing in the conditions of his probation suggests that it would be revoked for merely securing a license. There is every reason to believe that faced with a term of 20 years for violating his probation he would take the precaution of securing approval. Marriage being a matter of public record, it was not a surreptitious action which he was likely to feel would escape the attention of the court. Whatever may have been

his intention, he did not in fact violate his probation. Hence the revocation was improper.

Reversed.