The STATE of Ohio, Appellee,

v.

THOMPSON, Appellant.

[Cite as State v. Thompson, 150 Ohio App.3d 641, 2002-Ohio-7098.]

Court of Appeals of Ohio,
Second District, Darke County.

No. 1578.

Decided Dec. 20, 2002.

Phillip D. Hoover, Darke County Assistant Prosecuting Attorney, for appellee.

Jerry C. Stollings, for appellant.

---

BROGAN, Judge.

{¶ 1} The present case involves the rather novel situation of a person being found guilty of a probation violation for entering into marriage. Appellant, Travis Thompson, was indicted on January 1, 2001, for having unlawful sexual

contact with a minor in June 2000. The crime in the indictment was stated as a fourth-degree felony (a violation of R.C. 2907.04), even though Thompson was 18 and the victim was 15 at the time of the offense.[1] The record does not reflect the details of the charge, but Thompson apparently impregnated a 15–year–old girl. After first pleading not guilty, Thompson later pleaded guilty to the fourth-degree felony, despite the fact that under R.C. 2907.04(B)(2), unlawful sexual contact becomes a first-degree misdemeanor if the offender is less than four years older than the other party.

{¶ 2} Subsequently, on July 30, 2001, the trial court sentenced Thompson to 36 months of community control, with various other sanctions included. The ninth condition of community control stated that Thompson would "[h]ave no contact with persons under 18 years of age unless approved by Adult Probation." The judgment entry imposing community control also provided that "a violation of the community control sanction imposed herein shall lead to more restrictive sanctions up to and including a prison term of eight (8) months."

{¶ 3} On December 4, 2001, the probation department filed an affidavit in support of issuance of arrest warrant upon probation violation. The affidavit alleged that Thompson had violated his probation because he was "ordered not to have contact with anyone under the age of 18, but on November 10, 2001, the Defendant wed Crystal Nicole Slayton, being 16 years of age." A letter from John Tabler, probation officer, was also filed. In the letter, Tabler informed Thomson that he was to appear at a hearing at which bond would be set. Thompson was further informed that a probable-cause hearing would be scheduled to determine if Thompson had committed the following violations:

{¶ 4} "1. The Defendant was ordered to have no contact with persons under 18 years of age unless approved by the Adult Probation Department.

{¶ 5} "a.) On November 10, 2001, the Defendant wed Crystal Nicole Slayton, being 16 years of age, in Greenville, Ohio.

{¶ 6} "b.) On December 04, 2001, the Defendant stated that his wife, Crystal Nicole Thompson, being 16 years of age, has resided with him since their marriage on November 10, 2001."

{¶ 7} Thompson appeared in court on December 5, 2001, and the court set a $1,000 cash, surety, or property bond. A special condition of the bond was that Thompson have "[n]o contact with *anyone* under age 18" (emphasis sic). There-

---

1. For purposes of the comment in the main text, we have accepted the state's representation that Thompson was indicted for and convicted of sexual contact with a 15 year-old girl. Under these circumstances, the conviction should have been of a first-degree misdemeanor. However, that point has not been appealed.

fore, as a condition of the bond, Thompson was precluded from having contact with his wife.

{¶ 8} Subsequently, Thompson appeared for a probable-cause hearing. At the hearing, Thompson stipulated to the facts as alleged, i.e., that he had wedded Crystal, a 16–year–old, on November 10, 2001, and had continued to live with her after their marriage. At the time of the marriage, Thompson was 19 years old. Thompson did not, however, concede that he had violated community-control requirements. Instead, Thompson argued that he had a fundamental right to marry and that the state could not impinge on family rights in connection with probation. There was no dispute that Thompson had complied with all other conditions of his probation, including supporting his minor child, obtaining a job, furthering his education, and so forth.

{¶ 9} After hearing argument from the state and the defense, the trial court found that a probation violation had occurred. The court then reimposed the prior terms and conditions of the original 36–month term of community control. Additionally, the court ordered further sanctions, including a 45–day term in jail, with work-release privileges as might later be granted, and payment of additional court costs, attorney fees, and costs of prosecution. A stay of the sentence was granted pending appeal.

{¶ 10} Thompson timely appealed and presents the following single assignment of error:

{¶ 11} "Whether the trial court's finding that Appellant had committed a probation violation for marrying was not supported by the law because the trial court interpreted a requirement of probation in an overly broad manner thereby infringing on Appellant's fundamental right to marry."

{¶ 12} After reviewing the issues, we find that the assignment of error has merit and should be sustained. Accordingly, the trial court judgment will be reversed.

{¶ 13} Although a trial court has broad discretion in imposing probation conditions, the court's discretion is not limitless. Specifically, the conditions "cannot be overly broad so as to unnecessarily impinge on the probationer's liberty." *State v. Jones* (1990), 49 Ohio St.3d 51, 52, 550 N.E.2d 469. In *Jones,* the Ohio Supreme Court established the following three-part test for evaluating probation conditions:

{¶ 14} "In determining whether a condition of probation is related to the 'interests of doing justice, rehabilitating the offender, and insuring his good behavior,' courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the

offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." Id. at 53, 550 N.E.2d 469.

{¶ 15} The condition imposed in *Jones* was that the defendant "have no association or communication, direct or indirect, with anyone under the age of eighteen (18) years not a member of his immediate family." Id., 49 Ohio St.3d at 52, 550 N.E.2d 469. The underlying crime involved five counts of giving alcohol to boys ages 10, 13, and 15, and/or assisting them in running away. Id. Although the Ohio Supreme Court upheld this probation condition, it did so by "rationally interpreting" it. In this regard, the court stressed that "the words 'have no association or communication, direct or indirect, with anyone under the age of eighteen (18) years not a member of his immediate family' should reasonably be interpreted as meaning an illicit or potentially unlawful association or communication." Id at 55, 550 N.E.2d 469. The court reasoned:

{¶ 16} "Literal enforcement of any condition of probation, including the instant one, could be found to be unreasonable under some suggested fact patterns. For example, it might be unreasonable to find a violation of the probation condition for the probationer to be in the presence of people under the age of eighteen years while he was attending church services or programs or a group therapy program, or in any normal work setting, among other situations. Courts imposing conditions on probation are not expected to define with specificity the probationer's behavior in all possible circumstances. Rather, the conditions must be clear enough to notify the probationer of the conduct expected of him, with the understanding that the court will act reasonably at a revocation hearing, aware of the practicalities and fundamental goals of probation." Id., 49 Ohio St.3d at 55, 550 N.E.2d 469.

{¶ 17} The probation condition in the present case prohibited "contact" with persons under age 18 without approval of the Probation Department. However, the contact that was the basis of the violation was marrying a 16-year-old girl and living with her after the marriage. Interpreted in this way, we think the probation condition unreasonably interfered with a lawful association. As has been said many times, marriage is "a fundamental right protected by the Due Process Clause: 'The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men.'" *Pena v. Northeast Ohio Emergency Affiliates, Inc.* (1995), 108 Ohio App.3d 96, 109, 670 N.E.2d 268, quoting *Loving v. Virginia* (1967), 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010.

{¶ 18} In *State v. Jahnke*, 148 Ohio App.3d 77, 2002-Ohio-371, 772 N.E.2d 156, the Tenth District Court of Appeals found that the trial court had impermissibly

violated a defendant's liberty by conditioning his probation on no contact for five years with his fiancée. Id. at ¶ 13. The crime for which the defendant had been indicted was theft of a car (belonging to his fiancée's mother) and receiving stolen property. However, he pleaded guilty to the lesser included offense of unauthorized use of a motor vehicle, and the stolen property charge was dismissed. Id. at ¶ 2. In the Tenth District's opinion, the five-year no-contact order violated all three criteria established in *Jones*. Specifically, the order did not reasonably relate to rehabilitating the defendant, as the relationship was not the contributing factor in his commission of the offense. Additionally, the order bore no relationship to the crime he committed or to future criminal conduct. Id. at ¶ 13–14.

{¶ 19} Similarly, in *State v. Harford* (Mar. 6, 2001), Richland App. No. 00CA89, 2001 WL 227704, a wife was convicted of illegally conveying drugs of abuse into the detention facility where her husband was imprisoned. As a condition of probation, the trial court ordered that the wife not have any contact with her spouse. However, the Fifth District found that the trial court abused its discretion by imposing clearly overbroad conditions of probation.

{¶ 20} As we mentioned, the first criterion under *Jones* is whether the probation condition "is reasonably related to rehabilitating the offender." 49 Ohio St.3d at 53, 550 N.E.2d 469. In this regard, we have some doubt about whether the condition in question is, in fact, reasonably related to rehabilitating Thompson. As we noted, the crime of conviction involved sexual contact between two teenagers. The record is very sparse concerning the facts of the alleged crime, and the only thing that is apparent is that the trial court was upset about teen pregnancy. Teen pregnancy is obviously undesirable, and nothing we say is intended to suggest otherwise. On the other hand, if such situations are made criminal matters, additional jails will have to be built in most parts of this nation. We stress that there may be more to the underlying conviction than a teen pregnancy. However, if so, the record does not reflect it.

{¶ 21} The second factor in *Jones* is whether the probation condition "has some relationship to the crime of which the offender was convicted." 49 Ohio St.3d at 53, 550 N.E.2d 469. Again, while some might question the efficiency of criminally prosecuting 18–year–old males who have relationships with 15–year–old females (since such relationships could easily involve high school seniors and sophomores), that is the law. There is certainly no evidence in the record, though, to support the state's assertion in its brief that Thompson is a pedophile. Nonetheless, because Thompson was convicted of unlawful sexual contact with a minor, the order not to have contact with persons under age 18 does bear some relationship to the crime.

{¶ 22} However, even if we assume that the first and second criteria in *Jones* are satisfied, the prohibition, as applied to this fact situation, does not relate to

"conduct which is criminal or reasonably related to future criminality," nor does it serve "the statutory ends of probation." 49 Ohio St.3d at 53, 550 N.E.2d 469. To the contrary, the conduct is that of creating a legal relationship of husband and wife, with the consent of the wife's parents. We cannot, under any stretch of the imagination, see how entering into a legally sanctioned marriage can be classified as "criminal or reasonably related to future criminality." That being the case, the probation condition cannot rationally be interpreted as forbidding such conduct. *Jones*, 49 Ohio St.3d at 54, 550 N.E.2d 469. We also see no basis for requiring prior consent of the probation department to the marriage. As we said, failure to obtain consent is the violation with which Thompson is charged.

{¶ 23}   In researching this point, we did find some limited instances in other jurisdictions where courts have restricted a convicted person's marital rights. For example, in *State v. Black* (1971), 289 Minn. 508, 183 N.W.2d 774, a defendant pleaded guilty to possession of marijuana, and one condition of his probation was that he ask permission from the Adult Correctional Commission to marry. Id. After the defendant applied for a marriage license without seeking prior permission, the trial court revoked his probation. Ultimately, the Minnesota Supreme Court reversed, because it felt that the mere act of applying for a license did not violate the defendant's probation. However, the court declined to hold that the probation condition violated public policy. Instead, the court said—without reference to any authority—that the condition was reasonably directed at the defendant's rehabilitation. In this regard, the court stated:

{¶ 24}   "It is enough to say that there may be situations where marriage compounds rather than resolves a probationer's problems. Until and unless he is economically and psychologically capable of supporting a family, it is proper to forbid his marriage, and in so doing he is denied no constitutional rights." 289 Minn. at 510, 183 N.W.2d 774.

{¶ 25}   In contrast, the Fifth District Court of Appeals in Ohio commented that "[o]ur courts should seek to protect, not impair, the marital relationship." *Harford*, 2001 WL 227704, at * 1. The Tenth District Court of Appeals likewise stressed the same point:

{¶ 26}   "Personal choice in matters of marriage is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. * * * The condition set forth by the trial court encroached on * * * [the defendant's] fundamental rights without any concomitant rehabilitative purpose." *Jahnke*, 148 Ohio App.3d 77, 2002-Ohio-371, 772 N.E.2d 156, ¶ 14.

{¶ 27}   We agree with the Tenth and Fifth District Courts of Appeal. We also note that generally, where infringement on marital rights has been upheld, either the martial relationship has been abusive or the marital partner or prospective marital partner was involved in crime, and most often the crime for

which the defendant was convicted. For example, in *People v. Graber* (1983), 128 Mich.App. 185, 339 N.W.2d 866, a defendant was abusive and threatened to shoot his wife. After the wife complained to the husband's probation officer, the probation conditions were amended to provide that the husband could not be in his wife's company without the permission of the probation officer. Similarly, in *State v. Gilkey* (1992), 111 Ore.App. 303, 826 P.2d 69, the defendant violated probation by assaulting his wife. As an additional condition of probation, the husband was ordered not to associate with his wife without the written permission of the court or a probation officer.

{¶ 28} In *State v. Allen* (1973), 12 Ore.App. 455, 506 P.2d 528, the trial court imposed a probation condition that required a defendant to obtain a court order before marrying. However, at the sentencing hearing, the defendant had announced that she intended to marry a habitual criminal who was also associated with the criminal activity for which the defendant was convicted. On appeal, the probation condition was upheld as justified by the facts of the case.

{¶ 29} Subsequently, however, in *State v. Martin* (1978), 282 Ore. 583, 580 P.2d 536, the Oregon Supreme Court narrowed a probation condition that prohibited a convicted felon from associating with any person who had ever been convicted of a crime. This category included the felon's husband. The court noted that where fundamental rights are involved, sentencing courts have less discretion than usual. Id., 282 Ore. at 588–589, 580 P.2d 536. The court then said:

{¶ 30} "In the case at bar, the sentencing court should have determined from the record whether as a matter of fact the spouse would be a bad influence so as to endanger rehabilitation or public safety and, if so, what interference with marital rights less than complete separation would serve to protect society's interests. The factual record in this case is incomplete, and the court did not consider whether a lesser interference with defendant's marriage would serve to rehabilitate defendant and secure the safety of society." 282 Ore. at 589–590, 580 P.2d 536.

{¶ 31} The above reasoning is consistent with the view expressed in *Jones* that courts must act reasonably at revocation hearings, "aware of the practicalities and fundamental goals of probation." 49 Ohio St.3d at 55, 550 N.E.2d 469.

{¶ 32} As we said, the act with which Thompson was charged, i.e., marriage, cannot reasonably be interpreted as involving an unlawful association. Id. at 53, 550 N.E.2d 469. Furthermore, when the trial court reimposed the probation conditions, including the prohibition of contact with anyone under 18 without the probation department's consent, the court failed to consider whether interfering with Thompson's marriage would serve rehabilitation objectives. In fact, the

record is devoid of any evidence indicating that the relationship was a bad influence on Thompson or presented a danger to society.

{¶ 33}   Based on the preceding discussion, the single assignment of error has merit and is sustained.   Accordingly, the judgment of the trial court is reversed.

Judgment reversed.

FREDERICK N. YOUNG, J., concurs.

FAIN, J., dissents.

FAIN, Judge, dissenting.

{¶ 34}   I would overrule Thompson's sole assignment of error and affirm the judgment of the trial court.

{¶ 35}   Thompson's offense involved some sort of taking sexual advantage of a minor female resulting in her becoming pregnant.   The test for determining whether a condition of probation (now community-control sanction) is appropriate is whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct that is criminal or reasonably related to future criminality and serves the statutory ends of probation.   *State v. Jones* (1990), 49 Ohio St.3d 51, 53, 550 N.E.2d 469.   In this case, one of Thompson's community-control sanctions was that he "[h]ave no contact with persons under 18 years of age unless approved by Adult Probation."   Thompson violated that sanction when he married a person under the age of 18 and thereafter began living with her, all without having sought the approval of, and without even notifying, the probation authority.

{¶ 36}   Had the trial court, in its community-control sanctions, imposed a blanket prohibition against any contact with a minor, or even with a specifically named minor, then I would agree that the sanction would have impermissibly infringed upon Thompson's right of association, like the blanket prohibition in *State v. Jahnke,* 148 Ohio App.3d 77, 2002-Ohio-371, 772 N.E.2d 156, against that defendant's having any contact with his fiancée.   That is not the sanction imposed in this case, however.   The sanction in this case merely required the prior approval of the probation authority.   Had Thompson sought that approval, citing his intention to seek to marry (apparently the minor he had impregnated) and the approval of her family, and been refused, I would probably be inclined to find that an abuse of discretion had occurred.   That is not what happened in this case. Thompson neither informed the probation authority of his intentions nor sought its approval.

{¶ 37} To be sure, even the requirement that the probation authority be consulted constitutes some interference with Thompson's right to marry. But so do reasonable restrictions upon a sanctionee's right to travel out of state or a sanctionee's right to associate with known criminals. Yet these may certainly be upheld as reasonable restrictions under appropriate circumstances.

{¶ 38} There does not seem to be any real dispute that the first two conditions set forth in *State v. Jones* are satisfied by the trial court's community-control sanction in this case. In my view, the third condition is satisfied as well. Thompson's contact with minors is conduct that is "reasonably related to future criminality," since his conduct resulting in the imposition of sanctions arises from his inability to avoid taking sexual advantage of minors.

{¶ 39} I agree with the trial judge, who, in rejecting Thompson's argument that the state was seeking to punish him for having married, replied: "I'm not punishing you for getting married. I'm punishing you because you didn't have enough nerve to tell Mr. Tabler that you were seeing somebody you knew you weren't supposed to see by age category, and then he has to find out in the newspaper that you got a marriage license out to somebody and the whole unraveling here is the fact that you don't want to tell people what's going on."

{¶ 40} It was the responsibility of the probation authority to ensure that Thompson did not use inappropriate contacts with minors to take sexual advantage with other minors, or, for that matter, with the minor female he took advantage of in the case resulting in his community-control sanction. Had Thompson forthrightly indicated his marital purpose in seeking again to be in contact with his victim, it may well be that the probation authority charged with protecting her would have permitted the contact, perhaps under some supervision. And if that permission had been refused, perhaps it would have constituted an abuse of discretion. Thompson did not comply with that requirement, which, in my view, was reasonably related to protecting minors from a repetition of his criminal conduct. As the trial judge noted, it was for that noncompliance that Thompson is now being punished, not the fact that Thompson's purpose was to seek to marry the minor. In my view, the punishment imposed, a 45–day jail term subject to work release, is not unreasonable in relation to his misconduct in failing to comply with the community-control sanction requiring him to seek approval of the probation authority before having any contacts with minors.

{¶ 41} I would affirm the judgment of the trial court.