### In re SPANGLER; In re Asbury.

[Cite as *In re Spangler*, 162 Ohio App.3d 83, 2005-Ohio-3441.]

Court of Appeals of Ohio,
Third District, Hardin County.

Nos. 6–04–13 and 6–04–14.

Decided July 5, 2005.

84

Richard W. Miller, for appellant Loretta Spangler.

Maria Santo, for appellant father.

David Goodin, for appellee Hardin County Department of Job and Family Services.

Jane Napier, guardian ad litem.

BRYANT, Judge.

{¶ 1} Mother-appellee, Loretta Spangler, brings this appeal from the judgment of the Court of Common Pleas of Hardin County, Juvenile Division, terminating her parental rights.

{¶ 2} On December 28, 1996, Christopher Asbury was born to Spangler and Jason Grubbs. Aaron Spangler was born to Spangler and Jessie Byers on January 15, 2003. On July 30, 2003, the Hardin County Department of Job and Family Services ("the Agency") filed complaints alleging that Christopher and Aaron were dependent or neglected and malnourished. The complaints alleged that the children were not fed, the home was infested with cockroaches, reports of domestic violence between Spangler and her current husband had been made, Spangler was suffering from depression, and the family had no source of income. Temporary custody was continued with the Agency from a prior custody plan that started on April 25, 2003.[1] On October 24, 2003, an adjudicatory hearing was held. The parties present were Spangler and Byers. Grubbs did not attend. The parties present stipulated that the children were dependent. The agency then asked to have the allegation of neglect dismissed. The trial court dismissed the neglect charge, found the children to be dependent, and ordered that the children remain in the temporary custody of the Agency. On October 30, 2003, the dispositional hearing was held. The parties agreed to the case plan previously filed with the trial court, and the trial court ordered that it be implemented.

{¶ 3} On February 11, 2004, the Agency filed a motion for permanent custody of Christopher and Aaron. The basis for the motion was that the parents would not be able to care for the children in the present or in the future. The Agency also claimed that the parents had failed to correct the problems that caused the initial involvement by the Agency.

{¶ 4} On June 16, 2004, Cody Spangler was born to Spangler and her current husband, Norris Spangler. The Agency immediately filed a complaint alleging that Cody was dependent and requesting temporary custody. The trial court granted temporary custody to the Agency because of the Agency's pending motion for permanent custody of Christopher and Aaron.

{¶ 5} On August 20, 2004, a permanent-custody hearing was held. A second day of hearings was held on August 27, 2004.[2] The trial court granted permanent

---

1. Due to some unknown problem with the original complaint, a new complaint was filed on July 30, 2003, and provides the basis for this appeal.

2. At the same time, the adjudication hearing for Cody was held. A third day of hearings were required in Cody's case and was held on September 3, 2004.

custody to the Agency on September 3, 2004. Permanent custody of Cody was granted to the Agency on September 27, 2004. Spangler appeals from the trial court's judgments. The questions concerning the permanent custody of Cody will be addressed in another case. As to the judgment granting permanent custody of Aaron and Christopher to the Agency, Spangler raises the following assignment of error.

> The case plan requiring [Spangler] to maintain a separate residence and life from [Norris] violates [Spangler's] fundamental right to marry.

{¶ 6} Spangler basically claims in her assignment of error that the trial court erred in requiring her to maintain a separate residence from Norris in order to have her children returned.

> As has been said many times, marriage is "a fundamental right protected by the Due Process Clause: 'The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men.'" *Pena v. Northeast Ohio Emergency Affiliates, Inc.* (1995), 108 Ohio App.3d 96, 109, 670 N.E.2d 268, quoting *Loving v. Virginia* (1967), 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010.

*State v. Thompson,* 150 Ohio App.3d 641, 2002-Ohio-7098, 782 N.E.2d 688, at ¶ 17.

■ {¶ 7} This requirement first appeared in the case plan dated October 29, 2003. The plan required specifically that "Loretta will not allow any persons to live in her home that have been found guilty of abusing or neglecting children." The plan was reviewed prior to the dispositional hearing, and all of the parties agreed to the plan. After determining that the parties were in agreement as to all of the terms of the case plan, the trial court ordered it implemented. No objections were raised at that time. Thus, the assignment of error must be reviewed under a plain-error standard.

■ {¶ 8} Public policy requires that the state not interfere with a marriage without a strong state interest. The Agency argues that since the case plan did not require Loretta to get a divorce, the case plan did not interfere with her right to marriage. However, Loretta was told repeatedly that until Norris was out of the house, the children would not be returned to her. Throughout the services, the social worker and the family coach consistently encouraged Loretta to divorce Norris. Specifically, Exhibit H of the Agency indicates the following:

> 6/30 Loretta has asked [Norris] to move and also called the authorities and he is still there. Loretta was upset last week and I told her that we would talk with Carie today. Carie suggested she file for divorce and get a restraining order against him if that is what she wants to do.

* * *

7/22 Talked with Loretta today about a letter that I received from Carie that stated if Norris is still living in the house, her recommendation would be not to return the children to the home. She stated she didn't receive the letter. I showed her the letter and told her that I would get another copy from Carie and get it to her. She is still stating to me that the judge said he didn't have to leave and his probation officer said that Carie had no right to make him leave.

\* \* \*

7/31 [Norris] has avoided me since he found out that children's services won't recommend reuniting the kids with Loretta as long as he is still in the home. I asked her if she tried again today to contact legal aide for her appointment. She said there was no answer. I told her to call again Monday. She asked me again why Norris has to leave the home since Judge Rapp said he didn't have to. I reminded her that he can stay in the home, but children's services won't recommend they reunite the kids with her, since Norris is living in the home.

\* \* \*

8/11 When I arrived she was just waking up from a nap. She said that she had talked with legal aide and the lady that sets the appointments wasn't there when she called, and they are going to have her call Loretta back. She said she went to the court house to get a CPO for Norris and she said they would not give her one. She said she took the letter that Carie gave her stating that if she wants her children back in the home, Norris had to be out. They told her that wasn't enough to give her a CPO against him. I keep telling her that is why she needs to start divorce proceedings.

\* \* \*

8/12 Loretta was asleep when I arrived today. She did give me papers to give to Carie. She said she wanted Carie to have them to prove that she is going to Legal Aide for assistance with her divorce and has an appointment with the Family Resource Center.

\* \* \*

9/3 I asked Loretta if she has had any contact with legal aide yet, and she said she has called numerous times and they don't return her calls. I told her to keep trying.

The exhibit also contains several instances of the family coach and the social worker telling Spangler that she cannot have any contact with Norris. Thus, the evidence is that the Agency not only was requiring Norris to be out of the home, but to be completely out of Spangler's life, including strongly encouraging her to divorce him. This attitude violates the public policy against interference in a marriage.

■ {¶ 9} Although the Agency was interfering with Spangler's fundamental right to marriage, this interference does not automatically require reversal. Under the plain-error standard, the error must be prejudicial.

In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *.

R.C. 2151.414.

{¶ 10} Here, Dr. Tennenbaum testified that Spangler would be unable to provide an adequate permanent home for the children within one year of the hearing. The trial court found that Spangler had failed to complete a medical assessment for herself and had failed to complete monthly budgets as required by the case plan. The trial court further held that Spangler was mentally retarded and was unlikely to be able to appropriately and adequately follow the case plan due to her mental abilities.

Spangler's prognosis for change is highly unlikely and she will "continue to respond as an overwhelmed parent who cannot prioritize concerns," and "cannot be expected to provide a safe and secure environment for [her] children without ongoing assistance." (See Dr. Tennenbaum's report.) Further [Spangler] "does not appear to possess the minimal parenting skills that are necessary to ensure a sufficient level of physical safety, cognitive stimu-

lation, warmth and affection or discipline and structure for Christopher's psychological development." (See Dr. Mahoney's report)

The family coach, Bonnie Clark, indicated there were no significant changes concerning [Spangler's] interaction with the children and parenting skills throughout the pendency of this matter in spite of the ongoing assistance of the coach.

The evidence in the record supports these findings. Thus, the trial court did not err in finding that Spangler had failed to comply with the terms of the case plan, pursuant to R.C. 2151.414(E)(1), and that Spangler would not be able to parent the children within one year, pursuant to R.C. 2151.414(E)(2). Since the trial court need find only one factor to enter a finding that the children should not be placed with the parent within a reasonable period of time, any error of the requirement that Spangler have no contact with Norris is harmless. The assignment of error is overruled.

{¶ 11} The judgments of the Court of Common Pleas of Hardin County, Juvenile Division, are affirmed.

Judgments affirmed.

ROGER, J., concurs.

SHAW, J., concurs in judgment only.