[Cite as *State v. Hower*, 2016-Ohio-5053.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

STATE OF OHIO                          :
                                       :
    *Plaintiff-Appellee*              :     Appellate Case No. 2015-CA-43
                                       :
v.                                     :     Trial Court Case No. 2015-CR-151
                                       :
JOSHUA D. HOWER                        :     (Criminal Appeal from
                                       :     Common Pleas Court)
    *Defendant-Appellant*            :
                                       :

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of July, 2016.

. . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, 200 North Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

CHRISTOPHER C. GREEN, Atty. Reg. No. 0077072, 400 Wayne Avenue, Dayton, Ohio 45410
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Defendant-Appellant, Joshua Hower, appeals from his sentence on two counts of Criminal Trespass, one count of Breaking and Entering, and one count of Safecracking. After Hower pled guilty to these charges, the trial court sentenced him to community control sanctions. As part of the sanctions, the trial court precluded Hower from having contact with his co-defendants, including Cortney Hill, who was pregnant with Hower's child at the time of sentencing.

{¶ 2} In support of his appeal, Hower contends that the trial court abused its discretion by preventing him from having contact with Hill for two years, except during the birth of their child, emergency medical situations, bank holidays, and court proceedings involving support, visitation, or custody. The court also ordered that visitation exchanges with the child must be accomplished through a third party.

{¶ 3} We conclude that the trial court did not abuse its discretion in imposing a no-contact order between Hower and his fiancée as part of Hower's community control sanctions. Hower and his fiancée were both involved in the crime to which Hower pled guilty, and the no-contact order was reasonably related to rehabilitating Hower, had some relationship to the crime of which Hower was convicted, related to conduct that was criminal or reasonably related to future criminality, and served the statutory ends of probation. Accordingly, the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

{¶ 4} In August 2015, Hower was indicted on 10 counts in the Champaign County Common Pleas Court. These charges included several counts of Breaking and Entering,

and involved crimes that occurred in June and July 2015 at various churches and a business in Champaign County, Ohio. The most serious of the crimes occurred on July 26, 2015, when Hower, Andrew Baker, Bryce Whitt, and Cortney Hill were alleged to have broken into the Renewed Strength Church, and to have removed various property including a safe, saxophone, a lock box, cash, and various video game systems, games, and controllers. The total damage from this particular incident was $3,822.45.

{¶ 5} During the time the case was pending, the court imposed a no-contact order among Hower, Baker, and Whitt, but did not impose such an order regarding Hower and Hill. In October 2015, Hower and the State entered into a plea agreement, pursuant to which the first two counts of the indictment would be amended from Breaking and Entering to Criminal Trespass, causing the crimes to be reduced from fifth-degree felonies to fourth-degree misdemeanors. Hower agreed to plead guilty to these charges, and also agreed to plead guilty to Counts Three (Breaking and Entering) and Nine (Safecracking), which were fifth and fourth-degree felonies, respectively. The remaining counts in the indictment were dismissed, and a presentence investigation ("PSI") was to be conducted.

{¶ 6} The plea hearing was held on October 8, 2015. At the time of the hearing, Hower had already pled to Breaking and Entering and Vandalism charges in Clark County, and was to be sentenced on October 14, 2015. He also had two fifth-degree felony charges pending in Shelby County that had not yet been resolved. The charges in Champaign, Shelby, and Clark Counties all occurred during the same time frame.

{¶ 7} After accepting Hower's plea and finding him guilty, the trial court ordered a PSI and set a sentencing date for November 5, 2015. The court then asked Hower who was with him in the courtroom, and Hower responded that Cortney Hill was there with

him.   When the court asked why, Hower stated that they lived together and only had one vehicle.

{¶ 8} The court had recognized Hill from prior hearings on her own charges, and wondered why a no-contact order had not been imposed.   The prosecutor explained that she had conducted the initial arraignments for all the co-defendants and had decided to allow contact because Hill was pregnant with Hower's child.

{¶ 9} Following this discussion, the trial court informed Hower that he needed to have a discussion with Hill before sentencing regarding what could happen if the court ordered them to be separated.   The court said it understood that Hill and Hower might desire to stay together because of the child.   In this regard, the court stated: "But it was demonstrated today, through your conduct in June and your conduct in other counties, that you can't even take care of yourself much less take care of each other.   And the fact that you have a baby on the way won't sway the Court's opinion as to what will happen to you.   So you need to have some preparations made."   Transcript of October 8, 2015 Plea Hearing, p. 23.   Hower indicated that he understood.

{¶ 10} At the November 5, 2015 sentencing hearing, the prosecutor noted that he had read the PSI report, and was recommending community control.   However, the prosecutor also asked the court to impose a no-contact order between Hower and the other co-defendants, including Hill.

{¶ 11} In response, defense counsel commented that the trial court had already imposed a no-contact order between Hower and Hill at Hill's sentencing.   Defense counsel asked the court to reconsider that ruling.   In addition, defense counsel stated that Hill had played a very minor part in the crimes, and stressed that it would be better

for the child (who was due later that month) if both parents were together. Defense counsel also did indicate that Hower (who had no prior record before his crime spree) was suggestible.

**{¶ 12}** When the trial court asked Hower why he broke into the church, Hower indicated that he got into a bad crowd and just followed what they did. After hearing Hower's statements, the court expressed concern over Hower's failure to accept responsibility. The court was also troubled because the woman Hower said he wanted to be with could lead him into bad situations.

**{¶ 13}** After indicating that it had reviewed the PSI report and victim impact statements, the court imposed community control for a period of two years, with the first 60 days to be spent in the regional jail. The court also imposed other conditions of community control, including that Hower was not to have contact with the other co-defendants, including Hill. The court made an exception for the child's birth, emergency medical situations, court hearings regarding custody, visitation, or support, and national holidays when banks were closed in observance of the holiday. In this regard, the court stated that "The goal is to have some opportunity for you to spend time with the child, as you put it, quote as a family, close quote. The Court will strongly advise you that you need to take care of yourself before you can reasonably expect to take care of a child." Transcript of November 5, 2015 Sentencing Hearing, p. 17.

**{¶ 14}** Hower now appeals from the judgment of the trial court.

II. Did the Court Abuse its Discretion in Imposing the No-Contact Order?

**{¶ 15}** Hower's sole assignment of error states that:

The Appellant's Community Control Sanction Where He Was to Have No Contact with His Fiancée and Mother of His Child, Except During the Birth of their Child and Bank Holidays for the Duration of His Two-Year Community Control Was an Abuse of Discretion.

{¶ 16} Under this assignment of error, Hower contends that the trial court's no-contact order is an abuse of discretion because it unnecessarily impinges on the fundamental rights of marriage and to raise a child. Hower also contends that trial court failed to apply the three-prong test set forth in *State v. Jones*, 49 Ohio St.3d 51, 550 N.E.2d 469 (1990).

{¶ 17} "The General Assembly has * * * granted broad discretion to trial courts in imposing community-control sanctions. We review the trial court's imposition of community-control sanctions under an abuse-of-discretion standard." (Citation omitted.) *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10. *Accord State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 19 (noting that "[a] 'sentencing court has broad discretion to shape community control sanctions provided that the sanctions are constitutionally and statutorily permitted.' ") (Citation omitted.)

{¶ 18} In *Jones*, the Supreme Court of Ohio held that:

In determining whether a condition of probation is related to the "interests of doing justice, rehabilitating the offender, and insuring his good behavior," courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory

ends of probation.

(Citations omitted.)   *Jones* at 53.

**{¶ 19}** Although community control was substituted for probation with the passage of Am.Sub. S.B. No. 2 in 1995, the Supreme Court of Ohio indicated in *Talty* that "[t]he community-control statute, despite changing the manner in which probation was administered, did not change its underlying goals of rehabilitation, administering justice, and ensuring good behavior * * *."   *Talty* at ¶ 16.   Consequently, the court found "no meaningful distinction between community control and probation for purposes of reviewing the reasonableness of their conditions."   *Id.*

**{¶ 20}** We have noted that "generally, where infringement on marital rights has been upheld, either the martial relationship has been abusive or the marital partner or prospective marital partner was involved in crime, and most often the crime for which the defendant was convicted."   *State v. Thompson*, 150 Ohio App.3d 641, 2002-Ohio-7098, 782 N.E.2d 688, ¶ 27 (2d Dist.).   For example, in *State v. Schwartz*, 6th Dist. Wood No. WD-12-060, 2013-Ohio-3958, the court upheld a no-contact order between spouses as reasonable where the defendant had been originally charged with hitting his wife.   *Id.* at ¶ 11.

**{¶ 21}** In *State v. Dye*, 9th Dist. Medina No. 06CA0101-M, 2007-Ohio-7040, the court of appeals reversed the imposition of a no-contact provision that prevented the defendant from having contact with his fiancée or her family.   The court stressed that the defendant had pled no contest to a theft charge, and that "[t]here is nothing in the record to suggest that Dye's relationship with [his fiancée] contributed to his criminal behavior."   *Id.* at ¶ 7.   *See also State v. Umphlettee*, 5th Dist. Licking No. 10-CA-18, 2010-Ohio-

5201, ¶ 35-36 (trial court did not abuse its discretion by adding community control sanction precluding contact with fiancée, after defendant violated community control by being in a home with weapons and being out after curfew, and fiancée lied to probation officer about defendant's presence); *State v. Schroer*, 5th Dist. Richland No. 2005-CA-0084, 2005-CA-0085, 2006-Ohio-2952, ¶ 49 (trial court did not err in imposing no-contact order between defendant and her boyfriend, where she was convicted of two separate crimes that involved her boyfriend as a co-defendant).

{¶ 22} "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. " 'Abuse of discretion' has been described as including a ruling that lacks a 'sound reasoning process.' " *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 23} Consistent with the above authority, we cannot say the trial court's decision was based on unsound reasoning. As a preliminary matter, Hower's fiancée, Cortney Hill, was directly involved in the crime for which Hower was being sentenced. Hower and his attorney also both indicated that Hower was suggestible and had difficulty resisting the influence and direction of his peers. Furthermore, as the trial court observed, Hower's explanation of the reason for his crimes was that he became involved with the wrong crowd. However, Hill was part of that crowd. Under the circumstances, we cannot find that the trial court's decision was based on unsound reasoning.

{¶ 24} We have also reviewed the PSI report, and it supports the trial court's

decision. During a period of several weeks, Hower engaged in a series of escalating crimes, and Hill was directly involved in the most serious incident at Renewed Strength Church. She was not a passive or unwilling participant. In addition, the PSI report indicates that Hill was in direct possession of stolen property (a lock box) after the break-in at the Renewed Strength Church, and kept the key to the lock box on a lanyard that she wore around her neck. Hill also told the police an unlikely story about multiple safes and televisions that were present in the home she and Hower shared. Specifically, Hill told officers that Hower found these items on the side of the road and brought them home.

{¶ 25} We note that in *Umphlettee*, the court of appeals stressed that the trial court did not preclude the defendant from having contact with his child. *Umphlettee*, 5th Dist. Licking No. 10-CA-18, 2010-Ohio-5201, at ¶ 37. Similarly, the trial court did not preclude Hower from having contact with his child. The court did not impose barriers to Hower obtaining visitation with the child after its birth. Instead, the court specifically allowed Hower to be in the presence of his fiancée for court hearings on visitation and custody, and only indicated that exchanges of the child be made through a third party.

{¶ 26} As an additional matter, R.C. 2929.15(C) provides that "[i]f an offender, for a significant period of time, fulfills the conditions of a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code in an exemplary manner, the court may reduce the period of time under the sanction or impose a less restrictive sanction." Thus, if Hower complies with the no-contact order, the trial court has the option of easing the restriction.

{¶ 27} Hower's second argument is that the trial court did not make express findings under *Jones*, 49 Ohio St.3d 51, 550 N.E.2d 469. We reject this argument, as

the trial court's discussion was sufficient to convey the court's reasoning.

{¶ 28} Finally, Hower contends that he was denied impartial sentencing because the trial court indicated that it would impose a no-contact order despite the result of any presentence investigation. Again, we disagree. The trial court was not aware prior to the plea hearing of the lack of a no-contact order, and only became aware of this fact after recognizing Hill in the courtroom. The trial court's remarks simply alerted Hower to the possibility that a no-contact order might be imposed as part of sentencing, so that Hower could plan accordingly. There is no indication that the trial court had made up its mind, no matter what the PSI report stated. Again, given that Hower and Hill were co-defendants in one of the crimes for which Hower was being sentenced, the no-contact order was reasonable.

{¶ 29} Accordingly, Hower's sole assignment of error is overruled.

## III.   Conclusion

{¶ 30} Hower's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN, J. and FROELICH, J., concur.

Copies mailed to:

Jane A. Napier
Christopher C. Green.
Hon. Nick A. Selvaggio