The STATE of Ohio, Appellee,

v.

EVERSOLE, Appellant.

[Cite as *State v. Eversole*, 182 Ohio App.3d 290, 2009-Ohio-2174.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22680.

Decided May 8, 2009.

Mathias Heck, Montgomery County Prosecuting Attorney, and Michele D. Phipps, Assistant Prosecuting Attorney, for appellee.

Andrea G. Ostrowski, for appellant.

FROELICH, Judge.

{¶ 1} Defendant-appellant, Jonathon E. Eversole, appeals a judgment of the Montgomery County Court of Common Pleas, in which the court held that Eversole violated the conditions of his judicial release and sentenced him to a two-year term of imprisonment. Eversole filed a timely notice of appeal on March 27, 2008.

I

{¶ 2} Eversole pleaded guilty to one count of felonious assault, in violation of R.C. 2903.11(B)(1), a felony of the second degree. Specifically, Eversole, with knowledge that he was a carrier of HIV/AIDS, had sexual conduct with another person, but failed to disclose that knowledge to the other person prior to the conduct occurring. Eversole was sentenced to two years in prison on November 2, 2006.

{¶ 3} On June 27, 2007, Eversole was granted judicial release, and the trial court placed him on community control for five years. One of the terms of Eversole's community control was that he "[h]ave no sexual contact with any individual without prior approval of the court as to such said individual." Eversole's probation officer testified that she informed Eversole that if someone wanted to engage in sexual relations with him, that person must personally appear at her office and "provide written documentation that had been notarized indicating such that they were aware of his health condition."

{¶ 4} During a meeting on January 7, 2008, Eversole admitted to his probation officer that he had engaged in numerous group sexual encounters with Eddie Hutchins and Carrie LeMaster. Pursuant to the terms of Eversole's community control, LeMaster personally informed the officer that she (LeMaster) knew of Eversole's medical condition and still intended to have sex with him. Hutchins, on the other hand, never received court approval to engage in sexual contact with Eversole, although he was admittedly aware of Eversole's condition prior to the contact.

{¶ 5} On January 11, 2008, Hutchins visited the probation officer and informed her that he and Carrie LeMaster had been having sexual relations with Eversole in a group setting. Hutchins specifically told the officer that he had anally penetrated Eversole in the presence of LeMaster on multiple occasions. Hutchins further stated that Eversole had performed oral sex on him, as well. At the revocation hearing, however, Eversole and LeMaster testified that Eversole and Hutchins had never engaged in any sexual acts together; rather, Hutchins would only watch as Eversole and LeMaster engaged in various sexual acts. Eversole also testified that he sometimes watched Hutchins and LeMaster have sex.

{¶ 6} Based on the information provided to her by Hutchins and Eversole, a notice of violation of community control sanctions was filed against Eversole on January 30, 2008. On March 24, 2008, the trial court held a hearing in order to determine whether Eversole had violated the terms of his community control. At the close of the hearing, the trial court found that Eversole had violated his community control solely by engaging in sexual contact with Hutchins without receiving prior court approval and sentenced him to two years in prison and a period of postrelease control.

{¶ 7} It is from this judgment that Eversole now appeals.

II

{¶ 8} Eversole advances one assignment of error in the instant appeal. That error is as follows:

{¶ 9} "The trial court abused its discretion when it revoked appellant's community control."

{¶ 10} In his sole assignment, Eversole contends that the trial court abused its discretion when it revoked his community control for allegedly having sexual contact with Hutchins without first receiving approval from the court. Eversole first argues that Hutchins was not a credible witness because he was making allegations against Eversole only in retaliation for LeMaster's cheating on him with Eversole. Next, Eversole argues that the court abused its discretion by revoking his community control because Hutchins already knew of Eversole's medical condition prior to engaging in sexual contact with him. Thus, Eversole contends that he had substantially complied with the court's order, namely that any potential sexual partners be aware of his medical condition before having sex with him. Lastly, Eversole argues that the terms of community control requiring that his potential sex partners seek approval of the court before engaging in sex with him is unconstitutional because it invaded his right to privacy.

■■ {¶ 11} Without expressing any opinion on its lawfulness, we do have concerns about the subject and breadth of the condition of community control imposed. However, Eversole failed to object to the terms of his community control that required that his potential sex partners seek approval of the court before engaging in sex with him. The order was issued on July 18, 2007, and was immediately appealable with respect to the terms and conditions of community control. *State v. Kelly,* Champaign App. No. 2004–CA–6, 2005-Ohio-3178, 2005 WL 1490449. Failure to timely object waives the opportunity for appellate review of any issue not preserved, and accordingly, that issue need not be considered for the first time on appeal. *State v. Self* (1990), 56 Ohio St.3d 73, 81, 564 N.E.2d 446; *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277. Upon a thorough review of the record, we conclude that Eversole did not properly preserve the portion of his first assignment of error pertaining to the unconstitutionality of the court's order.

■ {¶ 12} Eversole further argues that Hutchins was not a credible witness and that the trial court abused its discretion in relying on his testimony to find that Eversole had violated the terms of his community control. Hutchins testified that he had anally penetrated Eversole on multiple occasions while he, Eversole, and LeMaster engaged in group sexual activities. Hutchins also testified that Eversole performed oral sex on him several times. While Eversole and LeMaster both testified that Eversole never engaged in any sexual contact with Hutchins, the trial court apparently chose to believe the testimony presented by Hutchins and the probation officer. The judge explicitly stated that he found Hutchins "far more credible" than Eversole and LeMaster. The trial court had before it evidence from which it could find that Eversole had violated the terms of

his community control by engaging in sexual contact with Hutchins without the prior approval of the court. The trial court, being in a better position to observe the witnesses and hear their testimony, is entitled to deference on issues of witness credibility and weight of the evidence. *State v. Miller,* Franklin App. No. 03AP–1004, 2004-Ohio-1007, 2004 WL 397143.

{¶ 13} Eversole argues that the clear intent of the probation condition, however, was to protect the public and deter Eversole from exposing unsuspecting sexual partners to HIV. The probation officer did testify that Eversole had never received prior approval from the court to have sex with Hutchins; however, Hutchins was well aware of Eversole's HIV and had voluntarily elected to expose himself to the risk of contracting the disease. Under these circumstances, Eversole contends, the underlying purpose of the condition of Eversole's judicial release was not violated.

{¶ 14} The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.11(A). When the defendant was granted judicial release, the court eventually included the condition, pursuant to R.C. 2929.20(I), that he "have no sexual contact with any individual without prior approval of the court as to said individual." The condition ordered by the trial court was, no doubt, intended to protect the public from the blatant disregard Eversole demonstrated when he failed to disclose his condition to the initial victim of his offense. Implicit in the system's concern with a violation of judicial release is the notion that the probationer is entitled to retain his liberty as long as he substantially abides by the conditions of his supervision. See generally *Morrissey v. Brewer* (1972), 408 U.S. 471, 479, 92 S.Ct. 2593, 33 L.Ed.2d 484. That a violation is willful, in the sense that the probationer had notice of the condition violated and could have adhered to it, does not automatically make revocation reasonable. Rule violations as applied to particular cases may be deemed unreasonable. See, e.g., *State v. Cassel* (Oct. 27, 1986), Darke App. No. 1150, 1986 WL 12360.

{¶ 15} "Before revoking probation, the court must determine (1) whether the terms of probation have been violated, and (2) whether revocation of probation is appropriate." *State v. Woods* (1994), 98 Ohio App.3d 606, 649 N.E.2d 48, as cited in *State v. Beam* (Mar. 29, 1996), Darke App. No. 1380, 1996 WL 144194, *4. "The second stage of the inquiry, what to do about the fact that * * * [the defendant] had violated the conditions of his probation, is akin to a sentencing disposition." *Woods* at 610, 649 N.E.2d 48.

{¶ 16} For example, in *State v. Thompson,* Darke App. No. 1578, 150 Ohio App.3d 641, 2002-Ohio-7098, 782 N.E.2d 688, the defendant had been convicted of having unlawful sexual contact with a minor and was prohibited, as a condition of

his probation, from having contact with persons under age 18 without approval of the probation department. However, the court found it was an abuse of discretion to revoke Thompson's probation for his marrying a 16–year–old.

{¶ 17} "Literal enforcement of any condition of probation * * * could be found * * * unreasonable under some suggested fact patterns." Id. at ¶ 16, citing *State v. Jones* (1990), 49 Ohio St.3d 51, 55, 550 N.E.2d 469. Although *Thompson* included a discussion of the right to marry, the court reiterated that a fundamental criterion of probation conditions is that they be "reasonably related to rehabilitating the offender." *Jones*, 49 Ohio St.3d at 53, 550 N.E.2d 469.

{¶ 18} Here, certainly one of the rehabilitative goals was to prohibit the defendant from having sexual contact with an individual who lacked notice of the defendant's medical condition. The condition specifically required Eversole to obtain prior approval, and the probation officer made this condition even more explicit by informing Eversole that any prospective sexual partner must personally appear at the probation officer's office and provide written documentation. This general objective was achieved despite the lack of prior approval of the court.

{¶ 19} However, another goal of the probation condition may have been to remind the participants of safe sexual practices or to safeguard subsequent sexual partners of Hutchins and LeMaster—both of which objectives fulfill the public-protection purpose of sentencing. Moreover, prior approval required him to act responsibly and respect lawful authority—certainly a prerequisite to rehabilitation. On these specific facts, we will not retrospectively scrutinize the reasons for the condition.

{¶ 20} This is not to say that the violation of any condition—no matter how distantly related to legitimate goals of community control or how much of a violation of the defendant's rights—legally justifies revocation merely because a defendant does not "follow the rules"; rather, the court acted within its discretion in granting Eversole judicial release, and while it would have acted within its discretion in keeping him on community control, it also acted within its discretion in revoking community control.

{¶ 21} Eversole's sole assignment of error is overruled.

### III

{¶ 22} Eversole's single assignment of error having been overruled, the judgment of the trial court will be affirmed.

Judgment affirmed.

Wolff, J., concurs.

Donovan, P.J., dissents.

Donovan, Presiding Judge, dissenting.

{¶ 23} I dissent. I recognize that judicial release has been characterized as a matter of grace, an opportunity for early release that comes with conditions, but any condition must be narrowly tailored to withstand constitutional scrutiny and must be both reasonable and enforced in a rational fashion.

{¶ 24} The condition placed upon Eversole, although related to his crime, was overly broad and constituted a substantial interference with sexual contact between consenting adults. Supervision conditions " 'cannot be overly broad so as to unnecessarily impinge upon a probationer's liberty.' " *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 13, quoting *State v. Jones* (1990), 49 Ohio St.3d 51, 52, 550 N.E.2d 469. Accordingly, we should apply a reasonableness test to judicial release sanctions that interfere with fundamental rights. This reasonableness requirement is, in fact, prong one of the three-part test adopted by the Ohio Supreme Court in *Jones*. Although a probation case, *Jones* has been consistently applied to judicial release supervision—i.e., community control.

{¶ 25} Is it rational to place supervision of such an intimate decision in the hands of the state? No, absolutely not. It also can best be characterized as unseemly in its enforcement. The condition tasked Eversole's probation officer with giving her imprimatur to high-risk sexual behavior. Although the majority suggests that another goal of the probation condition may have been to remind the participants of safe sexual practices, this was not done by the probation officer, nor was she qualified to dispense such advice. This endeavor is not a function that the adult probation department should undertake, and nor should the judge himself. The behavior demeans the judicial function. Although there is a legitimate state interest in reducing the spread of HIV and a legitimate desire to supervise Eversole so as to prevent future similar crimes, there are other more reasonable ways to accomplish such goals. For example, counseling, education, and health-care services would be more beneficial to the rehabilitative goal of community control. It was unreasonable to require Eversole to bring his sexual partners to the probation department office in order to secure the blessing (approval) of the court to engage in high-risk sexual behavior. The record reflects that the probation officer simply granted oral approval when two females sought the court's approval. This condition was obviously not carefully or narrowly tailored. Nor was it rationally enforced.

{¶ 26} Even if such a broad condition regarding the monitoring of sexual behavior of those with HIV were constitutional in the first instance, which seems

doubtful, the condition should be restricted to sexual conduct and not prohibit all forms of sexual contact. The statutory definition of sexual contact includes some activity that arguably may not create a risk of exposure to HIV.

{¶ 27} A condition that is well intentioned and designed to both rehabilitate Eversole and protect society does not alone make the condition reasonable and appropriate. It cannot be ignored that the condition required individuals (Eversole's sexual partners) not subject to the court's jurisdiction to come before the court personally in order to disclose their most intimate intentions.

{¶ 28} I would find on this record that revocation was an abuse of discretion. The purpose of the suspect condition was met as Hutchins knew full well of Eversole's HIV status; thus, Eversole did not violate the law, nor did Eversole endanger an innocent individual. Was there a technical violation of the condition? Yes, clearly. But the condition requiring court approval of sexual contact is unwise and unreasonable in the first instance.

{¶ 29} Additionally, Hutchins had his own pre-existing intimate relationship with Eversole preincarceration. He knew then that Eversole had HIV and admitted videotaping his girlfriend, LeMaster, having sex with Eversole. (She was one of two women who obtained prior court approval for sexual contact. Hutchins, however, testified that he would not have sought such prior court approval.) It is questionable whether Hutchins, who was previously involved in sexual contact and conduct with Eversole, should have fallen under the purview of such a condition in the first instance. Furthermore, this record reveals that Hutchins complained to the court only once LeMaster deserted him for Eversole. As noted, Hutchins was, in fact, videotaping and encouraging the relationship between LeMaster and Eversole, knowingly and unabashedly choosing to enter into such high-risk behavior himself even after Eversole's initial imprisonment.

{¶ 30} Under these circumstances, there was no valid or lawful reason for Hutchins to secure the court's permission to continue high-risk behavior of his own choosing or for the trial court to seek to protect him. On these facts, Eversole should not be penalized with re-imprisonment. I would reverse the judgment of the trial court.

WILLIAM H. WOLFF JR., J., retired, of the Second District Court of Appeals, sitting by assignment.