[Cite as *Lawrence v. Hardin Hills Health Ctr.*, 2013-Ohio-2048.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

CHRISTINE A. LAWRENCE,

    APPELLANT,                            CASE NO. 6-12-13

    v.

HARDIN HILLS HEALTH CENTER,         O P I N I O N

    APPELLEE.

Appeal from Hardin County Common Pleas Court
Trial Court No. 20111104 CVF

**Judgment Affirmed**

**Date of Decision: May 20, 2013**

APPEARANCES:

    *Terry L. Hord* for Appellant

    *Frank D. Hatfield* for Appellee

**PRESTON, P.J.**

{¶1} Plaintiff-appellant, Christine A. Lawrence, appeals the Hardin County Court of Common Pleas' judgment affirming the State Personnel Board of Review's decision finding she was an unclassified employee. Lawrence argues the trial court abused its discretion when it found that the administrator for plaintiff-appellee, Hardin Hills Health Center, had authority to terminate Lawrence and was its executive officer. Lawrence also contends that the trial court abused its discretion by determining she had a fiduciary relationship with the administrator. For the reasons that follow, we affirm.

{¶2} The instant matter stems from the termination of Lawrence's employment with Hardin Hills, a county home. After an internal investigation, Nick Scheck, Hardin Hills' administrator, notified Lawrence that he was terminating her employment effective August 6, 2009.[1] The letter stated, "[a]s you have previously been informed, you are an unclassified employee at will who may be terminated for any reason not inconsistent with law." The results of the internal investigation or any other reasons Scheck may have had for terminating Lawrence's employment are unclear from the record.

---

[1] R.C. 5155.03 authorizes the superintendent of a county home to use the title "administrator." We will use the terms interchangeably as they refer to the same position.

{¶3} On August 10, 2009, Lawrence filed a notice of appeal with the State Personnel Board of Review ("SPBR"). Lawrence challenged her classification and removal.

{¶4} On November 2, 2009, Hardin Hills filed a motion to dismiss Lawrence's appeal. Hardin Hills argued Lawrence was an unclassified employee because she held a fiduciary relationship with her principal and had the authority and discretion to act for and in the place of her principal. Hardin Hills contended that the SPBR lacked subject matter jurisdiction to review the removal of unclassified employees and should dismiss the appeal.

{¶5} On December 11, 2009, Lawrence filed her motion in response. Lawrence argued she was hired as a classified employee and the administrator lacked the authority to change her classification.

{¶6} On May 3, 2010, an SPBR Administrative Law Judge ("ALJ") held a hearing on the pending matter. The parties subsequently filed post-hearing closing briefs.

{¶7} On February 1, 2011, the ALJ issued her report and recommendation. The ALJ determined that the Hardin Hills' administrator was the principal executive officer and that Lawrence had a fiduciary relationship to the administrator, so she was an unclassified employee. The ALJ also found that the administrator was the appointing authority and had the power to remove an

employee. The ALJ recommended that the SPBR dismiss Lawrence's appeal for lack of jurisdiction pursuant to R.C. 124.03.

{¶8} On February 15, 2011, Lawrence filed objections to the ALJ's report and recommendation. On February 25, 2011, Hardin Hills responded to Lawrence's objections.

{¶9} On March 10, 2011, the SPBR adopted the recommendation of the ALJ and dismissed Lawrence's appeal for lack of subject matter jurisdiction pursuant to R.C. 124.03.

{¶10} On March 22, 2011, Lawrence filed a motion for reconsideration and order to stay with a motion to take new evidence. On that same day, Hardin Hills filed a motion to strike Lawrence's motion. On April 6, 2011, Hardin Hills filed a response to Lawrence's motion.

{¶11} On April 29, 2011, the SPBR denied Hardin Hills' motion to strike and granted Lawrence's motion in part, accepting the records submitted as supplemental evidence. After reviewing all of the evidence and pleadings, the SPBR found no reason to change or modify its existing order and denied Lawrence's motion for reconsideration.

{¶12} On May 15, 2011, Lawrence filed a notice of appeal to the Hardin County Court of Common Pleas. Lawrence argued Scheck improperly reclassified her as an unclassified employee. Lawrence contended that the SPBR erred in

determining that Scheck was the appointing authority rather than the Hardin County Commissioners. Lawrence further argued that the SPBR incorrectly determined she had a change in job function and classification, asserting that her job duties were essentially unchanged over the course of her employment. On February 9, 2012, Lawrence filed her brief. On March 7, 2012, Hardin Hills filed its response.

{¶13} On May 16, 2012, the trial court filed its judgment entry. The trial court found that the SPBR's order was supported by reliable, probative, and substantial evidence and was in accordance with the law, and affirmed the SPBR's decision.

{¶14} On June 14, 2012, Lawrence filed a notice of appeal. Lawrence now raises three assignments of error for our review. Since Lawrence's arguments address the same issues of fact and law, we will consolidate them for the purposes of our discussion.

### Assignment of Error No. I

**The trial court abused its discretion by ignoring the fact that the Hardin Hills Health Center (HHHC) administrator had no authority to terminate Christine A. Lawrence's employment or summarily designate her as an unclassified employee.**

### Assignment of Error No. II

**The court below failed to recognize the SPBR was incorrect in concluding that Nick Scheck was a principal executive officer for**

**purposes of O.R.C. Section 124.11(A)(28) and then establishing a fiduciary relationship for Christine A. Lawrence with him.**

**Assignment of Error No. III**

**The trial court abused its discretion affirming the SPBR decision that found a fiduciary relationship with the administrator when the facts were not established for Christine A. Lawrence to have such a relationship.**

{¶15} In her assignments of error, Lawrence argues that in order to affirm the SPBR's decision, the trial court had to determine that Scheck was Hardin Hills' appointing authority and that she was an unclassified employee. Lawrence contends that the trial court erred by making both of these findings. In her first assignment of error, Lawrence argues the trial court erred when it found that Scheck had the authority to terminate her employment at Hardin Hills. Lawrence contends that pursuant to R.C. 5155.01 and R.C. 5155.03, the commissioners set the wages for Hardin Hills employees, set the rules for its operation, and are the appointing authority. Lawrence argues the commissioners passed a resolution creating the employee handbook for Hardin Hills, which identified the commissioners as the appointing authority. Lawrence contends that since Scheck was not the appointing authority and the commissioners did not pass a resolution terminating her employment, Scheck did not have the authority to remove her from her position at Hardin Hills.

{¶16} In her second assignment of error, Lawrence argues the trial court erred in affirming SPBR's finding that Scheck was a principal executive officer, and thus an appointing authority, and that he had a fiduciary relationship with her. In her third assignment of error, Lawrence contends that the trial court abused its discretion in affirming the SPBR's finding that she had a fiduciary relationship with Scheck because this finding is not supported by the record.

{¶17} Hardin Hills argues the SPBR and trial court correctly determined that Lawrence was an unclassified employee due to her fiduciary relationship with Scheck, and that Scheck was Hardin Hills' appointing authority. Hardin Hills contends that the power of removal is incidental to the power of appointment, so Scheck had the authority to terminate Lawrence's employment. Hardin Hills also argues that Lawrence had a position involving trust and discretion where she was authorized to act on behalf of Scheck, so she had a fiduciary relationship with him and was an unclassified employee. We will first determine whether the trial court abused its discretion by affirming the SPBR's finding that Scheck was Hardin Hills' appointing authority, and then we will address whether Lawrence had a fiduciary relationship with him.

*1. Appointing Authority*

{¶18} When reviewing an administrative agency order, the trial court must consider the record to determine whether the agency's order is supported by

reliable, probative, and substantial evidence and is in accordance with the law. *Adams v. Crawford Cty. Bd. of Commrs.*, 3d Dist. No. 3-07-19, 2007-Ohio-6966, ¶ 14, citing *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). Our review of the trial court's decision is more limited, and requires this Court to determine whether the trial court abused its discretion. *Id*. at ¶ 16; *Lima Pub. Library Bd. of Trustees v. State Emp. Relations Bd.*, 3d Dist. No. 1-10-51, 2011-Ohio-1730, ¶ 27, appeal denied by 129 OhioSt.3d 1477, 2011-Ohio-4751. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶19} Revised Code Section 5155 governs county homes. R.C. 5155.01 outlines the relative duties of the county commissioners and administrator and states, in pertinent part:

> [t]he board of county commissioners * * * shall prescribe rules for the management and good government of the home. The superintendent or administrator may employ an administrative assistant and additional necessary personnel, at rates of wages to be fixed by the board of county commissioners * * *.

R.C. 5155.03 pertains to the superintendent or administrator and provides that:

> [t]he board of county commissioners or operator shall appoint a superintendent, who may be authorized to use the title

'administrator' * * *. The superintendent or administrator shall perform the duties that the board or operator imposes and shall be governed in all respects by the board's or operator's rules. * * * The board or operator may, by resolution, provide for the appointment by the superintendent or administrator of an assistant superintendent or administrator, who shall perform the duties at the county home prescribed by the superintendent or administrator.

{¶20} Additionally, R.C. 124.01(D) defines an "appointing authority" as "the officer, commission, board, or body having the power of appointment to, or removal from, positions in any office, department, commission, board, or institution."

{¶21} The parties in the present case cite *Farnsworth v. Bd. of Medina Cty. Commrs.*, 61 Ohio App.2d 72 (9th Dist.1978) and *Hancock Cty. Home v. Welker*, 3d Dist. No. 1-80-14 (Jul. 31, 1980) in support of their respective positions. As an initial matter, we note that both cases rely on former versions of the applicable statutes. However, in light of the minimal case law addressing the issues before this Court, we will take them into consideration.

{¶22} In *Farnsworth*, the Medina County Commissioners removed the superintendent of the Medina County Home for the Aged after an audit revealed a deficit in the pension check accounts. *Farnsworth* at 72. The superintendent's

daughter subsequently admitted taking the money. *Id.* The SPBR disaffirmed the commissioners' removal order and the trial court affirmed that decision. *Id.*

{¶23} The Ninth District determined the superintendent was a classified employee. Lawrence argues this Court should adopt the Ninth District's reasoning, specifically where it reviewed Section 5155 of the Revised Code and determined that it placed "virtually all administrative responsibilities for running the county home under the supervision of the County Commissioners." *Id.* at 74. The Ninth District observed that the statutes required the commissioners to prescribe rules and regulations for running the home, required the commissioners to inspect the home, to maintain separate financial records for the home, and prohibited them from removing the superintendent unless there was "good and sufficient cause." *Id.* The Court also reviewed the relationship between the superintendent and the commissioners. *Id.* The Court noted that the superintendent had never hired anyone without obtaining prior approval from the commissioners and had never fired anyone. *Id.* The commissioners had interviewed job applicants for the county home, had reviewed employment applications, had reviewed all purchases made for the home, and ultimately had approved or disapproved those purchases. *Id.* Furthermore, a witness from the Ohio Department of Administrative Services testified that the agency considered the superintendent to be a classified employee. *Id.* As a result, the Ninth District

held that the disaffirmance order based on the conclusion that the superintendent was a classified employee was supported by reliable, probative, and substantial evidence. *Id*. at 75.

{¶24} We disagree with Lawrence that this Court should rely on *Farnsworth* to determine that Scheck's authority was likewise limited by the commissioners in the present case. The current version of R.C. 5155.03 explicitly states that "[t]he superintendent or administrator shall be in the unclassified civil service." It is thus unlikely that *Farnsworth* remains good law in light of this change in the statute. Even if this Court were persuaded by the Ninth District's reasoning, the present case is factually distinguishable. Scheck testified that he was responsible for hiring Hardin Hills' employees. (May 3, 2010 Tr. at 75). Scheck testified that Lawrence and he created Hardin Hills' yearly budget, and then he would discuss the budget with the commissioners. (*Id*. at 86). According to Scheck, it was his understanding that he was Hardin Hills' appointing authority and that he made the final decisions. (*Id*. at 90). Thus, Scheck was an unclassified employee who had much more control over Hardin Hills' operation than the superintendent in *Farnsworth*.

{¶25} In *Welker*, the superintendent of the Hancock County Home sent Eleanor Welker, the director of nursing, notice of her discharge. 3d Dist. No. 1-80-14 at *1. According to that notice, Welker was an unclassified employee. *Id*.

Welker challenged her removal, arguing the removal document was defective because it was not signed by the county commissioners, it was not on the form required by statute, it erroneously stated she was in the unclassified civil service, and no removal order had been filed with the county commissioners or the director of administrative services. *Id.* The SPBR found that Welker was a classified employee because she did not have a fiduciary or administrative relationship to the superintendent. *Id.* The County Home appealed the order to the trial court, which found prejudicial error because the SPBR had not permitted the County Home to introduce evidence regarding the reasons for Welker's removal. *Id.* at *2. Welker appealed to this Court. *Id.* This Court determined that the trial court must have concluded that Welker was a classified employee, because otherwise she would have been subject to discharge at will. *Id.* Since the County Home did not appeal that judgment, this Court considered it a final decision and only addressed the issue of whether the case should be remanded for an evidentiary hearing. *Id.*

{¶26} Welker argued that since she was in the classified civil service and the County Home had failed to follow the proper procedures pursuant to Revised Code Section 124, the issue of her discharge for cause was not properly before the SPBR. *Id.* at *3. After reviewing the Administrative and Revised Code procedures, this Court determined that the County Home had substantially complied with the requirements. *Id.* at *6. This Court reviewed Welker's notice

of removal, which was signed by the County Home's superintendent. *Id*. at *5. Welker contended the notice was invalid because the superintendent was not the appointing authority. *Id*. This Court noted that the Revised Code granted the superintendent the power to employ personnel and that the superintendent exercised that power without seeking approval from the county commissioners. *Id*. This Court also observed that the superintendent was to be appointed by the county commissioners and governed by the rules and regulations they promulgated. *Id*. This Court stated:

> [h]owever here we note [the superintendent] is given explicit power by statute to employ personnel and the testimony shows no restriction on this power by any action or rule of the county commissioners. We would conclude that in this instance the superintendent was the head of the institution who would in fact request a certified list of persons eligible for appointment under Section 124.27 R.C. and would in fact make such an appointment. We conclude he was the appointing authority to sign any order of discharge and did so here.

*Id*. This Court has thus previously determined that a superintendent of a county home was the appointing authority, and that an order of discharge signed by the superintendent but not by the county commissioners was valid.

{¶27} We also find persuasive 2007 Ohio Atty.Gen.Ops. No. 2007-031. In that opinion, the attorney general specifically addressed the question of whether a superintendent of a county home, rather than the board of county commissioners, is the appointing authority. *Id.* The attorney general determined that the superintendent is the appointing authority. *Id.* at *3.

{¶28} The attorney general reviewed Section 5155 of the Revised Code and noted that while the county commissioners fix the wages and "may, by resolution, provide for the appointment by the superintendent or administrator of an assistant superintendent or administrator," it is the superintendent that has the power to actually appoint the county home's employees. *Id.* at *2. The attorney general concluded that although the county commissioners may empower the superintendent to appoint an assistant superintendent or administrator, the superintendent is the one who makes the appointment and is the appointing authority of the county home's officers and employees. *Id.* The attorney general also observed that the statutes do not contain any language empowering the commissioners to appoint the county home's employees or to approve the superintendent's appointments of employees. *Id.* at *3. The attorney general contrasted this language with other statutes that empower county officials to appoint certain county employees (R.C. 305.13 grants county commissioners the authority to appoint a clerk; R.C. 305.16 empowers the commissioners to employ

"a superintendent, and such watchmen, janitors, and other employees as are necessary for the care and custody of the court house, jail, and other county buildings, bridges, and other property under its jurisdiction and control") and with other statutes that provide the commissioners with the power to approve appointments made by other county officers or entities (R.C. 307.84 provides for the appointment of employees for the county microfilming centers; R.C. 392.02 requires the county director of job and family services "with the approval of the board of county commissioners, [t]o appoint all necessary assistants and superintendents of institutions under the jurisdiction of the department, and all other employees of the department"). *Id.* at *1.

{¶29} The attorney general also relied on the decision of the Supreme Court of Ohio in *State ex rel. Minor v. Eschen*, 74 Ohio St.3d 134 (1995). *Id.* at *2. In that case, the Court stated, "'the power of removal is regarded as incident to the power of appointment.'" *Id.*, quoting *Eschen* at 139. The attorney general concluded:

> [b]ecause the board of county commissioners does not have the
> power to appoint or remove persons from county home offices or
> positions, it follows that the board is not the appointing authority, as
> defined in R.C. 124.01(D), of the officers and employees of a county
> home for purposes of R.C. Chapter 124. Therefore, the

superintendent of a county home, rather than the board of county commissioners, is the appointing authority, as defined in R.C. 124.01(D), of the officers and employees of a county home for purposes of R.C. Chapter 124.

*Id*. at *3.

**{¶30}** This conclusion is consistent with the record in this case. Lawrence testified that when she was hired, Hardin Hills filled out a personnel action form that was sent to the department of administrative services. (May 3, 2010 Tr. at 266); (Ex. A). The form required the "approval of appointing authority" and was signed by the Hardin Hills administrator, not the county commissioners. (Ex. A). Additionally, Lawrence's job description was signed by the administrator as the "appointing authority." (Ex. D). Lawrence's personnel action form sent to the department of administrative services indicating that her civil service status went from provisional to certified and was signed by the administrator as the "appointing authority." (May 3, 2010 Tr. at 271); (Ex. E). Another of Lawrence's personnel action forms demonstrating her promotion to business services officer was signed by the administrator as the "appointing authority" and not by the county commissioners. (Ex. F). Finally, Lawrence's personnel action forms showing an increase in her wages were also signed by the administrator as the "appointing authority." (Exs. H, J).

**{¶31}** Lawrence was thus hired, promoted, and received pay raises through the administrator as the appointing authority. Now Lawrence argues that the administrator was not the appointing authority and could not remove her from her position. However, if this is true, Lawrence did not validly obtain her position in the first place. The Tenth District Court of Appeals has held, "the improper hiring of a state employee does not give one the right to claim the benefits and protection of being in the classified services of the state." *Cesner v. Ohio Dept. of Commerce*, 10th Dist. No. 01AP-1448, 2002-Ohio-4308, ¶ 13. Lawrence's argument is thus illogical and this Court declines to adopt it. We are also not persuaded that the county commissioners are the appointing authority because they have designated themselves as the such in the employee handbook. We have not found any statutory authority for the commissioners to grant themselves this power. Therefore, after reviewing the record and the applicable law, we cannot find that the trial court abused its discretion by affirming the SPBR's determination that Scheck was the appointing authority. We turn now to the question of whether Lawrence was an unclassified employee.

### 2. *Civil Service Classification*

**{¶32}** Lawrence argues she was originally hired to work for Hardin Hills as business service clerk three in the classified civil service. Lawrence contends that although her title has changed, her position has remained essentially the same.

Lawrence argues Scheck unilaterally changed her classification from classified to unclassified and that he lacked authority to do so. In response, Hardin Hills argues the SPBR correctly determined that Lawrence was in the unclassified civil service because she had a fiduciary relationship with Scheck.

{¶33} Pursuant to R.C. 124.11, positions in the civil service are divided between classified and unclassified employment. *Gallia Cty. Sheriff v. Burnette*, 4th Dist. No. 92-CA-13, *3 (Feb. 16, 1993). "Employees in the classified service can only be removed for good cause and only after the procedures enumerated in R.C. 124.34 and the rules and regulations thereunder are followed." *Id*. Whereas, "[e]mployees in the unclassified service do not receive the protections afforded employees in the classified service." *Id*.

{¶34} The trial court affirmed the SPRB's finding that Scheck acted as Hardin Hills' principal executive officer. The Tenth District Court of Appeals has relied on a definition of the principal as the individual that is the "'[h]ighest in rank, authority, character, importance, or degree.'" *Burigana v. Indus. Comm.*, 108 Ohio App.3d 574, 576 (10th Dist.1996), quoting Black's Law Dictionary 1192 (6 Ed.1990). Other appellate courts have affirmed findings that positions such as a county public defender or service safety director were principle executive officers. *See Johnson-Hebb v. Clinton Cty. Public Defender*, 12th Dist.

No. CA2009-06-007, 2010-Ohio-1817; *Rossington v. Bucyrus Civ. Serv. Comm.*, 3d Dist. No. 3-05-03, 2006-Ohio-147.

{¶35} We have already concluded that Scheck was Hardin Hills' appointing authority and had the power to hire and remove employees. Scheck's testimony established that his responsibilities included supervising Hardin Hills' employees, working with Lawrence to prepare the budget for Hardin Hills, presenting the budget to the commissioners for their approval, entering into contracts for services for Hardin Hills, and performing other duties that he determined would benefit the residents. (May 3, 2010 Tr. at 75-135). We cannot find that the trial court abused its discretion by determining Scheck was Hardin Hills' principal executive officer.

{¶36} It is undisputed that when she was hired as business service clerk three, Lawrence was a classified employee. The question before this Court is whether the trial court abused its discretion by affirming the SPBR's finding that Lawrence's promotion to business service officer placed her in the unclassified civil service.

R.C. 124.11(A)(28) includes in the unclassified civil service:

For cities, counties, civil service townships, city health districts, general health districts, and city school districts, the deputies and assistants of elective or principal executive officers authorized to act

for and in the place of their principals or holding a fiduciary relation

to their principals.

**{¶37}** We must now address whether Lawrence had a fiduciary relationship with Scheck. A fiduciary relationship involves a higher level of trust and confidence than an ordinary relationship between an employer and employee. *Treciak v. Dept. of Commerce*, 5 Dist. No. CA00085, *3 (Mar. 24, 1995), citing *In re: Termination of Emp. of Pratt*, 40 Ohio St.2d 107, 114 (1974). When determining whether an employee has a fiduciary relationship with her employer, "[c]ourts are to look at the employee's duties and determine whether there is a great degree of discretion in carrying out those duties, and whether the duties are done in good faith and on another's behalf and not merely because of a legal obligation." *Id.*, citing *Yarosh v. Becane*, 63 Ohio St.2d 5, 12 (1980). Additionally, R.C. 124.03 provides:

The mere failure of an employee's appointing authority to file a

statement with the department of administrative services indicating

that the employee is in the unclassified civil service, or the mere late

filing of such a statement, does not prevent the state personnel board

of review from determining that the employee is in the unclassified

civil service. In determining whether an employee is in the

unclassified civil service, the state personnel board of review shall

-20-

consider the inherent nature of the duties of the employee's classification during the two-year period immediately preceding the appointing authority's appealable action relating to the employee.

**{¶38}** At the hearing before the ALJ, Lawrence testified that Scheck was her direct supervisor. (May 3, 2010 Tr. at 10). Lawrence was authorized to sign Scheck's name at his direction, such as when he was unavailable or out of the office. (*Id.* at 15-16). Lawrence testified she had signed contracts for Hardin Hills, such as a contract for internet service and a phone book advertisement. (*Id.* at 16-21). Lawrence also signed Scheck's name to documents transferring funds from one of Hardin Hills' accounts to another, including numerous transfers for $10,000, $20,000, and $30,000. (*Id.* at 22-25); (Exs. 7, 9, 10). Lawrence further testified that she signed Scheck's name for multiple payroll periods from 2007 through 2009. (May 3, 2010 Tr. at 29-32); (Exs. 12-19, 90-94). Lawrence signed documents in her own name for workers' compensation claims recommending whether or not Hardin Hills would accept the claim. (May 3, 2010 Tr. at 37-40); (Exs. 24-30). Lawrence also balanced Hardin Hills checkbook with another employee and withdrew money from Hardin Hills' bank account. (May 3, 2010 Tr. at 47-50). Lawrence testified that she would "spend down" resident funds at the direction of the residents' families and without any direction from Scheck. (*Id.*

at 53-55). Lawrence also signed the human resources employee's time sheets as her supervisor and completed an evaluation form for that employee. (*Id*. at 59-63).

{¶39} Scheck testified that Lawrence was responsible for Hardin Hills' accounts receivable, Medicare and Medicaid billing, workers' compensation and unemployment claims, and that she supervised the human resources employee. (*Id*. at 76). According to Scheck, Lawrence would initially determine Hardin Hills' budget and then modify it with him. (*Id*. at 78). Scheck testified that he worked with Lawrence more than with any of the other department heads. (*Id*. at 81). Scheck testified, "there were many times that I knew she signed my name and there were just as many times I didn't know she was signing my name." (*Id*.). Scheck testified that he did not require Lawrence to seek his approval for all of her decisions because he trusted her "to do the right thing." (*Id*.). Scheck further testified that Lawrence could make decisions that would impact Hardin Hills and that she would address questions in his absence. (*Id*. at 101-102).

{¶40} After reviewing the evidence, we cannot find that the trial court abused its discretion by affirming the SPBR's finding that Lawrence had a fiduciary relationship with Scheck. Lawrence was frequently authorized to act on Scheck's behalf and assumed a position of trust and confidence with her management of Hardin Hills' finances, workers' compensation claims, and

resident accounts. As a result, we conclude that Lawrence was an unclassified employee.

{¶41} As a final matter, we note that during the oral argument before this Court, the parties discussed whether Lawrence had received notice of her change in classification or had agreed to that change. In the brief she submitted to this Court, Lawrence argued that the county commissioners were the appointing authority, and consequently, Scheck did not have the power to change her classification status. Lawrence contended that Scheck had unilaterally altered her designation with the letter placing her on administrative leave and that even if he was the appointing authority, he could not change her classification without her consent.

{¶42} However, in her brief to the trial court, Lawrence argued that Scheck was not the appointing authority, and even if he was, she did not have a fiduciary relationship with him. Lawrence failed to argue that even if the trial court found that Scheck was the appointing authority and she had a fiduciary relationship with him, that Scheck did not use the appropriate procedure to change her classification, which is essentially the argument she now raises before this Court. Lawrence's failure to raise this issue before the trial court waives the opportunity for appellate review of any issue not preserved. *Nicoll v. Ohio Dept. of Job &*

*Family Servs.*, 2d Dist. No. 24509, 2011-Ohio-5207, ¶ 26, citing *State v. Eversole*, 182 Ohio App.3d 290, 2009-Ohio-2174 (2d Dist.).

**{¶43}** Even assuming Lawrence has preserved this issue for our review, we cannot find reversible error. Pursuant to R.C. 124.03, Scheck's alleged failure to file the required statement with the department of administrative services does not prevent the SPRB from determining that Lawrence is in the unclassified civil service. The trial court and the SPRB correctly considered the nature of Lawrence's duties preceding her removal as required by this provision. *Id.* Furthermore, the evidence presented indicates that Lawrence should have been on notice that her classification may have changed as a result of her promotion. Lawrence's title changed from an account clerk to business services officer, she received an increase in pay, and she assumed additional duties, such as responsibility for the Medicare and Medicaid billing. (May 3, 2010 Tr. at 266-278, 287-288); (Ex. F). Moreover, the personnel action form promoting Lawrence also designated two changes, a promotion and a change in her civil service status. (Ex. F). We cannot find that the trial court abused its discretion by affirming the SPBR's finding that Lawrence was an unclassified employee as a result of her fiduciary relationship with Scheck.

**{¶44}** Lawrence's first, second, and third assignments of error are, therefore, overruled.

{¶45} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, J., concurs.**

**/jlr**

**SHAW, J., concurs in Part and Dissents in Part:**

{¶46} I concur in the judgment reached by the majority as to the first assignment of error. I respectfully dissent from the decision of the majority regarding the second and third assignments of error.

{¶47} Everyone agrees the record contains uncontroverted evidence that Lawrence commenced her employment as a classified civil service employee. In my view, there is no persuasive evidence in the record to establish in any satisfactory fashion: 1) how or when her employment allegedly became unclassified; 2) that Lawrence was in any way apprised as to the point in time that her position was being changed from classified to unclassified; or 3) that there was even any specific point in time that a fact-finder could reasonably conclude that Lawrence "should have known" that her position was being changed from classified to unclassified.

{¶48} Her supervisor testified that over time, Lawrence's duties essentially evolved into the kind of duties that would normally be considered unclassified and that at one point he filed a document referred to as "Exhibit F" dated 12/30/97 with the appropriate state agency, changing her job title, noting a promotion, and also marking a box to note a change in civil service status. However, there is nothing on Exhibit F to indicate that Lawrence in any way signed, acknowledged or was even made aware of this document and the civil service box that is checked merely notes a change in "civil service status" and nothing more. The words "unclassified" or "classified" appear nowhere on the document. Thus for all the document tells us, the change in civil service status could have referred to a new or higher level of job title within a classified position.

{¶49} The change of anyone's employment from classified to unclassified is a significant change in employment status that obviously carries significant differences in termination due process rights. In my view, any such change should not be left to after-the-fact analysis by the state agency at the time of termination as to the de-facto "evolution" of the job over many years but should be based upon clear evidence of a specific change in the job description, at a given point in time, together with evidence of a specific apprisal and acknowledgement of the change in civil service classification by the employee at the time the change is made.

{¶50} Absent any of these circumstances in the record of this case, the presumption of continuing the classified status she started her employment with should remain in favor of Lawrence and her termination process should follow the steps required in cases of classified employees. I would sustain the second and third assignments of error and remand the matter to the trial court and agency for that purpose.

/jlr